(No. 75161.—

(No. 75647.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. QUALITIAN JEFFRIES, Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DERRICK NEWBURN, Appellant.

*Opinion filed January 19, 1995.*

Rita A. Fry, Public Defender, of Chicago (Robert T. Fox, Frank P. Madea and Jeffrey M. Howard, Assistant Public Defenders, of counsel), for appellant.

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Arleen C. Anderson, Assistant Attorney General, of Chicago, and Renee Goldfarb, Peter Fischer, Theodore Fotios

Burtzos and Susan R. Schierl, Assistant State's Attorneys, of counsel), for the People.

William Jameson Kunz, of Evanston, for *amicus curiae* Illinois Attorneys for Criminal Justice.

Rita A. Fry, Public Defender, of Chicago (James S. Jacobs, Assistant Public Defender, of counsel), for appellant.

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Arleen C. Anderson, Assistant Attorney General, of Chicago, and Renee Goldfarb, Peter Fischer, Theodore Fotios Burtzos and Susan R. Schierl, Assistant State's Attorneys, of counsel), for the People.

CHIEF JUSTICE BILANDIC delivered the opinion of the court:

In these consolidated appeals, the defendants raise several challenges to the constitutionality of the Illinois homicide scheme for first and second degree murder. (Ill. Rev. Stat. 1987, ch. 38, pars. 9—1, 9—2.) We examine the following topics: (1) whether the first and second degree murder scheme violates a defendant's right to due process under the Federal and Illinois Constitutions, and (2) the "unreasonable belief" in self-defense aspect of the second degree murder statute.

We allowed the Illinois Attorneys for Criminal Justice to submit a brief as *amicus curiae* in support of the defendants' position. For the reasons that follow, we uphold the constitutionality of the Illinois homicide scheme for first and second degree murder.

## FACTS

### Cause No. 75161

In cause No. 75161, the defendant, Qualitian Jeffries, was charged by indictment with, *inter alia*, two counts of first degree murder in connection with the stabbing death of his former live-in girlfriend, Donna Hussey. According to the State's version of the events, Jeffries broke into the back door of the victim's residence. The victim's aunt, Mallie Williams, saw Jeffries repeatedly stab the victim with a knife in the dining room. In an attempt to escape from Jeffries, the victim ran outside the house and into the street screaming for help. Although Williams pleaded with Jeffries to leave the victim alone, he continued stabbing the victim and then ran off through a gangway. The victim sustained 23 stab wounds.

Jeffries told a different story, testifying at trial that he had stabbed the victim in self-defense. Approximately two weeks prior to the murder, the victim had shot Jeffries in the arm. On the day of the murder, Jeffries went to the victim's home to retrieve some clothing and personal effects. Jeffries testified that the victim greeted him with a knife in her hand and said, "If you thought I tried to kill you then, ***," and raised her hand. The two struggled for control of the knife. Jeffries eventually gained control of the knife and repeatedly stabbed the victim.

Following a bench trial, Jeffries was convicted of first degree murder and sentenced to a 50-year term of imprisonment. On appeal, Jeffries challenged the constitutionality of the second degree murder statute. The appellate court held that under the present statutory scheme, a defendant is not required to prove any element of first degree murder, and therefore, there is no violation of due process. (No. 1—90—1067 (unpublished order under Supreme Court Rule 23).) We allowed

Jeffries' petition for leave to appeal to this court (145 Ill. 2d R. 315).

### Cause No. 75647

In cause No. 75647, the defendant, Derrick Newburn, was charged by indictment with two counts of first degree murder. The following facts were revealed at trial. Monique Mitchell testified that she lived with the victim, McKinley Johnson. On the afternoon of September 5, 1989, she heard Newburn arguing with the victim in the alley behind her apartment. Mitchell called through the window and told the victim to come inside. The victim complied, but returned to the street a short time later. Newburn approached the victim, and the two men engaged in a fist fight. Mitchell intervened in the argument.

As Mitchell and the victim walked back toward their apartment, Newburn again approached the victim, and pushed him. A second fist fight erupted between the two men. The fight broke up, and Mitchell and the victim reentered their apartment.

Shortly thereafter, the victim left the apartment and went across the street to a liquor store to make a telephone call. As Mitchell looked out of the apartment window, she saw Newburn approach the apartment carrying a baseball bat. Newburn was accompanied by a man named Albert Thomas. Mitchell grabbed a 2- by 4-inch board and ran out of the apartment. Newburn and Thomas chased the victim from the liquor store. Newburn swung the bat at the victim, and struck him in the leg. The victim fell to the ground in the middle of the street, but got up and continued running toward the apartment building. Mitchell then ran across the street toward the three men and swung the board at Thomas. Newburn pursued the victim, and struck him in the left arm and leg with the baseball bat. As the victim struggled to get away, Newburn bludgeoned the victim

in the head with the baseball bat three times. Newburn and Thomas then fled down an alley.

Newburn introduced evidence at trial to show that his actions were based upon self-defense. Newburn testified that in the final confrontation, the victim carried a gun as he walked out of the apartment building with Mitchell. The victim then began to chase Newburn with the gun. After Newburn managed to evade the victim, he grabbed a baseball bat and walked back to the liquor store. When the victim left the store, Newburn swung the bat and hit the victim's arm. As the victim attempted to run toward his apartment, Thomas tripped him. The victim then showed the gun to Newburn. Newburn swung the bat, hoping to knock the gun out of the victim's hand. Instead, he hit the victim on the side of the head. The victim dropped the gun. Mitchell then grabbed the gun, and Newburn fled from the scene.

The jury rejected Newburn's proffered defense of self-defense. Newburn was found guilty of first degree murder, and he was sentenced to a 28-year term of imprisonment. On appeal, the defendant argued that the second degree murder statute is unconstitutional because it required him to prove that his belief in the necessity of self-defense was unreasonable. The appellate court rejected Newburn's argument. (No. 1—90—3410 (unpublished order under Supreme Court Rule 23).) We granted Newburn's petition for leave to appeal (145 Ill. 2d R. 315) and consolidated it with Jeffries' appeal.

## ANALYSIS

As a preliminary matter, we recognize that the judicial role in construing statutes is to ascertain legislative intent and give it effect. To accomplish this goal, a court will seek to determine the objective the legislature sought to accomplish and the evils it desired to remedy. *People v. Scharlau* (1990), 141 Ill. 2d 180.

All statutes are presumed to be constitutionally valid. (*People v. Shephard* (1992), 152 Ill. 2d 489, 499; *Rehg v. Illinois Department of Revenue* (1992), 152 Ill. 2d 504; *Continental Illinois National Bank & Trust Co. v. Illinois State Toll Highway Comm'n* (1969), 42 Ill. 2d 385, 389.) The party challenging a statute's validity bears the burden of clearly establishing the statute is unconstitutional. (*Bernier v. Burris* (1986), 113 Ill. 2d 219, 227.) In construing a statute, this court has a duty to affirm the statute's validity and constitutionality if reasonably possible. (*Shephard*, 152 Ill. 2d at 499.) Any doubts will be resolved in favor of the validity of the law challenged. *Rehg*, 152 Ill. 2d at 512.

I

We find it instructive to begin our analysis with a discussion of the fundamental differences between the previous murder statutes and the present first and second degree murder statutes in Illinois. In 1986, the legislature enacted Public Act 84—1450 (Pub. Act 84—1450, eff. July 1, 1987 (1986 Ill. Laws 4222)) to amend section 9—2 of the Criminal Code of 1961 (see Ill. Rev. Stat. 1985, ch. 38, par. 9—2). The Act renamed the offense of murder to first degree murder. (Compare Ill. Rev. Stat. 1985, ch. 38, par. 9—1, with Ill. Rev. Stat. 1987, ch. 38, par. 9—1.) The Act also abolished the offense of voluntary manslaughter, and substituted for it the offense of second degree murder. (See Ill. Rev. Stat. 1987, ch. 38, par. 9—2.) The intent of the legislature in enacting Public Act 84—1450 was to remedy the confusion and inconsistency that had developed in regard to the murder and voluntary manslaughter statutes.[1]

---

[1]For a comprehensive discussion of the changes in Illinois' murder statute, see Steigmann, *First and Second Degree Murder in Illinois*, 75 Ill. B.J. 494 (1987); Haddad, *Second Degree Murder*

The newly enacted first degree murder statute provides in relevant part:

"(a) A person who kills an individual *without lawful justification* commits first degree murder if, in performing the acts which cause the death:

(1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or

(2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another; or

(3) He is attempting or committing a forcible felony other than second degree murder." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a).

The second degree murder statute, which replaced the voluntary manslaughter statute, provides in relevant part:

"(a) A person commits the offense of second degree murder *when he commits the offense of first degree murder as defined in paragraphs (1) or (2) of subsection (a) of Section 9—1 of this Code* and either of the following mitigating factors are present[.]" (Emphasis added.) Ill. Rev. Stat. 1987, ch. 38, par. 9—2(a).

The first form of second degree murder, commonly known as provocation, is present where:

"(1) At the time of the killing [defendant] is acting under a sudden and intense passion resulting from serious provocation by the individual killed or another whom the offender endeavors to kill, but he negligently or accidentally causes the death of the individual killed[.]" Ill. Rev. Stat. 1987, ch. 38, par. 9—2(a)(1).

---

*Replaces Voluntary Manslaughter in Illinois: Problems Solved, Problems Created,* 19 Loy. U. Chi. L.J. 995 (1988); Shanes, *Murder Plus Mitigation: The "Lesser Mitigated Offense" Arrives in Illinois,* 27 J. Marshall L. Rev. 61 (1993); O'Neill, *An Analysis of Illinois' New Offense of Second Degree Murder,* 20 J. Marshall L. Rev. 209 (1986); Haddad, *Allocation of Burdens in Murder-Voluntary Manslaughter Cases: An Affirmative Defense Approach,* 59 Chi.-Kent L. Rev. 23 (1982).

The second form of second degree murder, at issue in this appeal, has been referred to as imperfect self-defense. The imperfect self-defense form of second degree murder occurs when there is sufficient evidence that the defendant believed he was acting in self-defense, but that belief is objectively unreasonable. Section 9—2(a)(2) provides that this form of second degree murder occurs where:

"(2) At the time of the killing [the defendant] believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable.
***

(c) When a defendant is on trial for first degree murder and evidence of either of the mitigating factors defined in subsection (a) of this Section has been presented, the burden of proof is on the *defendant* to prove either mitigating factor by a preponderance of the evidence before defendant can be found guilty of second degree murder. However, *the burden of proof remains on the State* to prove beyond a reasonable doubt each of the elements of first degree murder and, when appropriately raised, the absence of circumstances at the time of the killing that would justify or exonerate the killing under the principles stated in Article 7 of this Code. In a jury trial for first degree murder in which evidence of either of the mitigating factors defined in subsection (a) of this Section has been presented and the defendant has requested that the jury be given the option of finding the defendant guilty of second degree murder, the jury must be instructed that it may not consider whether the defendant has met his burden of proof with regard to second degree murder until and unless it has first determined that the State has proven beyond a reasonable doubt each of the elements of first degree murder." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 38, par. 9—2.

Under the old homicide statute, the *State* had the burden to prove, beyond a reasonable doubt, the elements of murder. (*People v. Reddick* (1988), 123 Ill. 2d 184.) Next, the defendant had the opportunity to pres-

ent evidence of a factor in mitigation, either serious provocation or unreasonable belief, which must have been present to reduce an offense of murder to voluntary manslaughter. (*Reddick*, 123 Ill. 2d at 197.) The *State* then had the burden to prove, beyond a reasonable doubt, the absence of the factor in mitigation. *Reddick*, 123 Ill. 2d at 198.

Under the new act, as set forth above, the *defendant* now bears the burden to prove, by a preponderance of the evidence, one of the factors in mitigation which must be present to reduce an offense of first degree murder to second degree murder. (Ill. Rev. Stat. 1987, ch. 38, par. 9—2.) The State still bears the burden to prove, beyond a reasonable doubt, the elements of first degree murder and, when appropriately raised, the absence of circumstances at the time of the killing that would justify or exonerate the murder. Ill. Rev. Stat. 1987, ch. 38, par. 9—2(c).

## II

### A. Federal Due Process

Before this court, the defendants ask that we examine Illinois' first degree and second degree murder scheme as it relates to imperfect self-defense. We first examine whether the homicide scheme violates the defendants' Federal constitutional right to due process of law.

*In re Winship* (1970), 397 U.S. 358, 364, 25 L. Ed. 2d 368, 375, 90 S. Ct. 1068, 1073, declared that the due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." A defendant's due process rights are violated when the burden shifts to the defendant to disprove an element of the offense. *Mullaney v. Wilbur* (1975), 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881; see also

*Patterson v. New York* (1977), 432 U.S. 197, 215, 53 L. Ed. 2d 281, 294-95, 97 S. Ct. 2319, 2329-30.

In *Mullaney*, the Supreme Court held that the defendant's due process rights were violated when he was required to negate a necessary element of murder in establishing the existence of a mitigating circumstance. The homicide statute at issue in *Mullaney* required proof of malice aforethought as an element of the offense of murder. The defendant, however, maintained that he acted in the heat of passion on sudden provocation, and the statute required that he prove this by a preponderance of the evidence in order to reduce the offense to manslaughter. Under Maine law, the *Mullaney* jury was instructed "that if the prosecution established that the homicide was both intentional and unlawful, malice aforethought was to be conclusively implied unless the defendant proved by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation." (*Mullaney*, 421 U.S. at 686, 44 L. Ed. 2d at 512, 95 S. Ct. at 1883.) If the defendant proved the passion, the conviction would be for the reduced charge of voluntary manslaughter. The Supreme Court "emphasized that 'malice aforethought and heat of passion on sudden provocation are two inconsistent things.' " (*Mullaney*, 421 U.S. at 686-87, 44 L. Ed. 2d at 512, 95 S. Ct. at 1883.) The State of Maine, therefore, defined voluntary manslaughter as murder *minus* malice, with the burden to prove the absence of malice resting upon the defendant. As such, the defendant had the burden to prove or negate an element of the offense. The Supreme Court held that this practice violated the defendant's right to due process. (*Mullaney*, 421 U.S. at 704, 44 L. Ed. 2d at 522, 95 S. Ct. at 1892.) Because malice aforethought was an element of murder, and the statute required the defendant to prove its absence for a voluntary manslaughter conviction, the

Maine statute impermissibly shifted the burden of proof to the defendant.

We recognize that it is clearly unconstitutional for a State to require a defendant to disprove an element of the crime charged. The due process clause of the fourteenth amendment, however, does not forbid a State from requiring a defendant to prove, by a preponderance of the evidence, the mitigation necessary to reduce the severity of a homicide charge. In *Patterson v. New York* (1977), 432 U.S. 197, 53 L. Ed. 2d 281, 97 S. Ct. 2319, the Supreme Court considered a New York statute requiring a defendant charged with second degree murder to prove, by a preponderance of the evidence, an affirmative defense of emotional disturbance in order to reduce the homicide to manslaughter. In order to convict an accused of murder, the jury was required to find beyond a reasonable doubt, based on all the evidence, including that related to the defendant's mental state at the time of the crime, each of the elements of murder *and* also to conclude that the defendant had not proved his affirmative defense. The Supreme Court held that *Winship*'s mandate was fully satisfied where the State of New York had proved beyond a reasonable doubt each of the elements of murder, but placed on the defendant the burden of proving the affirmative defense of extreme emotional disturbance. *Patterson*, 432 U.S. at 206, 53 L. Ed. 2d at 289, 97 S. Ct. at 2325.

Following *Patterson*, the Supreme Court has consistently approved State statutory schemes that do not require the State to disprove every affirmative defense, but that instead allocate to a defendant the burden of establishing his affirmative defense by a preponderance of the evidence. In *Martin v. Ohio* (1987), 480 U.S. 228, 94 L. Ed. 2d 267, 107 S. Ct. 1098, the defendant, charged with aggravated murder, sought to reduce that charge by offering the affirmative defense of self-defense. Simi-

lar to *Patterson*, the State was first required to prove all elements of aggravated murder. The defendant was then given an opportunity to justify the killing by proving, by a preponderance of the evidence, that her actions were based upon self-defense. The Supreme Court again held that a State's allocation of the burdens of proof violates due process *only* if the State assigns to a defendant the burden of disproving a necessary element of the charged offense. *Martin*, 480 U.S. at 233-34, 94 L. Ed. 2d at 273-74, 107 S. Ct. at 1102; see also *Medina v. California* (1992), 505 U.S. 437, 445, 120 L. Ed. 2d 353, 363, 112 S. Ct. 2572, 2577 (California law upheld that assigned a defendant the burden of proving his incompetence to stand trial).

We note parenthetically that the Court in *Martin* reasoned that a different result might have occurred "if the jury had been instructed that self-defense evidence could not be considered in determining whether there was reasonable doubt about the State's case, *i.e.*, that self-defense evidence must be put aside for all purposes unless it satisfied the preponderance standard." (*Martin*, 480 U.S. at 233-34, 94 L. Ed. 2d at 273-74, 107 S. Ct. at 1102.) Under those circumstances, the instructions would have run afoul of *Winship* because they would have relieved the State of its burden of proving all elements of the offense beyond a reasonable doubt. (*Martin*, 480 U.S. at 234, 94 L. Ed. 2d at 274-75, 107 S. Ct. at 1102.) However, because the given instructions conveyed to the jury that *all* evidence must be considered in determining whether the State had met its burden of proving the elements of the defendant's offense beyond a reasonable doubt, the ultimate burden remained with the State and did not create a *Winship* problem. *Martin*, 480 U.S. at 233-34, 94 L. Ed. 2d at 273-74, 107 S. Ct. at 1101-02.

After careful review, we hold that the Illinois

statutory scheme is consistent with the due process principles approved by the Court in *Patterson* and *Martin*. Section 9—2(a) requires that the State first prove beyond a reasonable doubt all elements of the offense of first degree murder as defined in section 9—1 (Ill. Rev. Stat. 1987, ch. 38, par. 9—1). A first degree murder charge will be reduced to second degree murder *only* where the State has proven the elements of first degree murder *and* the defendant has established a mitigating factor by a preponderance of the evidence. Notwithstanding the fact that the statute assigns to a defendant the burden of establishing an affirmative defense, it also requires that the jury be instructed "not [to] consider whether the defendant has met his burden of proof with regard to second degree murder *until* and *unless* it has first determined that the State has proven beyond a reasonable doubt each of the elements of first degree murder." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 38, par. 9—2(c).

Consistent with the principles of *Winship*, the instructions given at defendant Newburn's jury trial clearly stated that the burden of proving the defendant's guilt beyond a reasonable doubt remained with the State throughout the case. The defendant was *not* required to prove his innocence. The jury was instructed to find the defendant guilty if it found, based on *all* the evidence, that the State had proven beyond a reasonable doubt that Newburn had killed McKinley Johnson without lawful justification and that Newburn had possessed either the requisite intent or knowledge that his acts created a strong probability of death or great bodily harm. If after considering *all* of the evidence the jury found that the State had not proven beyond a reasonable doubt any of the elements of first degree murder, the jury was instructed to find the defendant not guilty and cease its deliberations. If, however, the State had proven the

elements of first degree murder, the jury was instructed to then continue its deliberations and consider whether the defendant had proven by a preponderance of the evidence the existence of a mitigating factor. By presenting evidence of a mitigating factor, Newburn was not attempting to disprove that he killed Johnson or any of the elements of first degree murder. Rather, by introducing evidence in mitigation, Newburn merely sought to lessen his culpability for the underlying offense of first degree murder. Therefore, the State's burden of proving the elements of first degree murder never shifted to the defendant.

Accordingly, we reject the defendants' assertion that Illinois' statutory scheme is analogous to the unconstitutional procedure prohibited by the Court in *Mullaney.* As explained in *Patterson,* the constitutional problem in *Mullaney* was that "malice, in the sense of the absence of provocation, was part of the definition of [the] crime" of murder, yet it was essentially presumed and "could be rebutted by the defendant only by proving by a preponderance of the evidence that [the defendant] acted with heat of passion upon sudden provocation." (*Patterson,* 432 U.S. at 216, 53 L. Ed. 2d at 295, 97 S. Ct. at 2330.) Conversely, in *Patterson,* no element of murder was presumed or implied against a defendant. (*Patterson,* 432 U.S. at 216, 53 L. Ed. 2d at 295, 97 S. Ct. at 2330.) Similar to *Patterson,* our Illinois statute requires the State to prove all elements of first degree murder beyond a reasonable doubt, and it only imposes upon the defendant the burden of establishing an affirmative defense once the State has met its initial burden.

### B. Mental State for Second Degree Murder

Prior to the enactment of the Criminal Code of 1961, a conviction for murder required proof that the killing was committed *with malice aforethought.* (Ill. Rev. Stat. 1959, ch. 38, par. 358 ("Murder is the unlawful killing

of a human being, in the peace of the people, with malice aforethought, either expressed or implied").) Manslaughter was previously defined as "the unlawful killing of a human being *without malice,* express or implied, and without any mixture of deliberation whatever." (Emphasis added.) (Ill. Rev. Stat. 1959, ch. 38, par. 361.) Because the term "malice aforethought" was not susceptible to clear definition, the legislature eliminated any reference to it in the definition of murder in the new criminal code. (Ill. Ann. Stat., ch. 38, par. 9—1, Committee Comments—1961, at 17 (Smith-Hurd 1979).) By eliminating the requirement of malice, the drafters of the new code removed the element that distinguished the crimes of murder and voluntary manslaughter. Following the enactment of the Criminal Code of 1961, murder was defined in the following manner:

"A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:

(1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or

(2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another; or

(3) He is attempting or committing a forcible felony other than voluntary manslaughter." Ill. Rev. Stat. 1985, ch. 38, par. 9—1.

Likewise, voluntary manslaughter was no longer described simply as a killing *without malice aforethought.* Instead, the offense of voluntary manslaughter was defined as follows:

"(a) A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion ***.

\* \* \*

(b) A person who *intentionally or knowingly* kills an in-

dividual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing *** but his belief is unreasonable." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 38, par. 9—2.

Thus, the unreasonable use of force form of voluntary manslaughter as set forth in section (b) required the same mental state as that required for murder, *i.e.*, that the killing be *intentional* and *knowing*. Therefore, voluntary manslaughter was transformed from *murder minus malice* to *murder plus mitigation*. The presence of one of the mitigating factors did not negate an element of murder. Rather, it simply reduced the seriousness of the offense and the severity of punishment. Compare Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(1) (the penalty for first degree murder shall be not less than 20 years nor more than 60 years), with Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(4) (the penalty for second degree murder, a Class 1 felony, shall be not less than 4 years and not more than 15 years).

In *People v. Wright* (1986), 111 Ill. 2d 18, this court clarified that the mental state for murder was identical to that of voluntary manslaughter. This court expressed that:

"The definition of voluntary manslaughter in our criminal code *does not* contain language distinguishing it from murder in regard to the defendant's intention or mental state. Voluntary manslaughter is in relevant part defined simply as criminal homicide committed by one 'acting under a sudden and intense passion resulting from serious provocation' or acting in the mistaken belief that self-defense justified the use of deadly force. (Ill. Rev. Stat. 1981, ch. 38, par. 9—2.) There cannot be a judgment of voluntary manslaughter in the absence of one of these mitigating factors. Thus, murder cannot be reduced to manslaughter unless one of the two statutory conditions is present." (Emphasis added.) *Wright*, 111 Ill. 2d at 28-29.

In holding that the mental states required for murder and voluntary manslaughter were indistinguishable,

this court, *sub silentio,* overruled its ruling of the prior year in *People v. Hoffer* (1985), 106 Ill. 2d 186. In *Hoffer,* the court held that the mental states for murder and voluntary manslaughter were mutually inconsistent. (*Hoffer,* 106 Ill. 2d at 194-95.) At this time, we reaffirm this court's holding in *Wright* that the mental states required for voluntary manslaughter, now known as second degree murder, are identical to that required for first degree murder. Illinois law recognizes *only* the following four mental states: intent, knowledge, recklessness, and negligence. (See Ill. Rev. Stat. 1987, ch. 38, pars. 4—3 through 4—7.) Murder and second degree murder each require the same mental state: either *intent* or *knowledge.* (See *People v. Allen* (1992), 153 Ill. 2d 145, 150-51 ("It is the presence of *** statutory mitigating factors that reduces an unlawful homicide from murder to voluntary manslaughter or second degree murder; it is not the absence of an intent to kill"); *People v. Fausz* (1983), 95 Ill. 2d 535, 539.) Moreover, second degree murder is *not* a lesser included offense of murder. Section 2—9 of the Criminal Code of 1961 defines an included offense in pertinent part as an offense that "[i]s established by *** a less culpable mental state." (Ill. Rev. Stat. 1987, ch. 38, par. 2—9(a).) Having determined that the mental states for murder and second degree murder are identical, it is evident that second degree murder is not a lesser included offense of first degree murder. Rather, second degree murder is more accurately described as a *lesser mitigated offense* of first degree murder. See *People v. Newbern* (1991), 219 Ill. App. 3d 333 (second degree murder is a lesser offense because its penalties upon conviction are lesser, and it is a mitigated offense because it is first degree murder *plus* defendant's proof by a preponderance of the evidence that a mitigating factor is present).

We recognize that there have been decisions of this

court that have not been exacting in the phraseology used to describe the mitigating factors of voluntary manslaughter and second degree murder. For instance, the mitigating factors of "serious provocation" or "unreasonable belief in justification" have been improperly referred to as "mental states *** of lesser culpability" (*Reddick*, 123 Ill. 2d at 195) or "mitigating mental states" (*People v. Flowers* (1990), 138 Ill. 2d 218, 241). Such terminology is inconsistent with our decision today, and should therefore no longer be followed.

## C. Due Process Under the Illinois Constitution

The defendants urge this court to interpret the due process clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 2) more expansively than its Federal counterpart. Even though the language of the two constitutions is the same, the scope of the Illinois due process provision need not be identical to that of the United States Constitution. (*People v. Scott* (1992), 148 Ill. 2d 479, 541.) We therefore consider whether the second degree murder statute meets the due process requirements of our own constitution.

In *Scott*, this court examined whether a defendant was deprived of due process of law under the Illinois Constitution where the defendant bears the burden of proving, by a preponderance of the evidence, that he is not guilty by reason of insanity. Under the insanity statute, before considering whether the defendant has borne his burden of proving that he was insane, a jury must first find that the State has proved each element of the charged offense. (Ill. Rev. Stat. 1985, ch. 38, par. 6—2(e).) A defendant's sanity is not an element of a charged offense. (Ill. Rev. Stat. 1985, ch. 38, par. 6—2(e).) This court concluded, therefore, that this procedure did not violate the defendant's right to due process. (*Scott*, 148 Ill. 2d at 543.) The Illinois Constitution does not prohibit placing the burden of proof on the defendant to

prove that a defendant was insane after the State had proved each element of the charged offense. *Scott*, 148 Ill. 2d at 543.

Likewise, under the present statutory scheme for second degree murder, section 9—2(c) requires that the jury must be instructed that it may not consider whether the defendant has met his burden of proof with regard to second degree murder *until* and *unless* it has first determined that the State has proven beyond a reasonable doubt each of the elements of first degree murder. (Ill. Rev. Stat. 1987, ch. 38, par. 9—2(c).) The due process clause of the Illinois Constitution does not forbid the legislature from requiring that the defendant prove, by a preponderance of the evidence, the mitigation necessary to reduce the severity of a homicide charge *after* the State has proven each element of the charged offense. The defendants have failed to offer any persuasive reason for this court to expand the magnitude of the Illinois due process clause. We therefore dismiss the defendants' assertion that the second degree murder statute violates the defendants' rights to due process under the Illinois Constitution.

### III

#### A

The defendants next contend that under the second degree murder statute, a defendant is required to prove that he had an *unreasonable* belief in self-defense. Such a claim, however, is contrary to a self-defense claim that the defendant held a *reasonable* belief in the necessity of deadly force. According to the defendants' argument, a defendant is placed in the untenable position of having to argue *both*: (1) that he had a reasonable belief in order to obtain an acquittal based on self-defense; *and* (2) that he had an unreasonable belief in the necessity for the use of force to obtain a second

degree murder conviction. The defendants' claim is based upon a literal reading of the statute that requires the defendant to prove that "[a]t the time of the killing he believe[d] the circumstances to be such that, if they existed, would justify or exonerate the killing [as self-defense], but his belief is unreasonable." (Ill. Rev. Stat. 1987, ch. 38, par. 9—2(a)(2).) In essence, the defendants contend that the "but his belief is unreasonable" language is a part of the requisite mitigation, and that the defendant bears the burden of proving it.

The defendants' argument, however, is a misconception of the "real world" of a murder trial. For instance, at defendant Newburn's trial, the State presented the testimony of Monique Mitchell to establish that the victim and Newburn had previously engaged in two fist fights on the afternoon of the fatal altercation. After the victim and Mitchell entered their apartment following the second fist fight, Jeanette Lindsey Rhymes testified that she heard Newburn say that he was "going to get a gun" and that everyone had better get off the street "because there was going to be some murders." Newburn then returned to a vacant lot directly across from the victim's apartment carrying a baseball bat. The State's witnesses testified that in the final attack, Newburn struck the victim with the baseball bat simultaneously in the left arm and leg. Although the victim attempted to get away, Newburn bludgeoned the victim in the head with a baseball bat. The victim fell down into a crouched position with his arms covering his head, and attempted to defend himself. Newburn, however, approached the victim, and again struck him in the head with the baseball bat.

Newburn testified at trial that when the victim emerged from his apartment, he was carrying a gun. He testified that the victim proceeded to chase and threaten him with the gun. However, Mitchell and Rhymes

testified that there never was a gun involved in any of the confrontations.

The jury was properly instructed regarding the burdens of proof and the fact that it had to consider *all* the evidence at each stage of its deliberation. The jury evaluated all the evidence and determined that the State had proven that Newburn intentionally killed the victim without lawful justification. The jury then reevaluated this same body of evidence to determine whether, although legally unjustified, Newburn was acting with the unreasonable belief that the circumstances justified his use of deadly force. The jury found that Newburn had not proven by a preponderance of the evidence the mitigating factor of imperfect self-defense. Accordingly, the jury returned a verdict finding Newburn guilty of first degree murder.

As illustrated by the example of defendant Newburn's trial, a defendant is *not* forced to argue that his "belief was unreasonable." Rather, as in defendant Newburn's case, he presented evidence to show that: (1) he had an actual belief in the necessity for self-defense, and (2) his belief in the necessity for self-defense was reasonable. However, even if the jury found that Newburn's belief was not objectively reasonable, he attempted to prove that *he had an actual belief* in the necessity of self-defense. We conclude, therefore, that section 9—2(c) does not violate a defendant's right to due process by forcing him to argue that he had an unreasonable belief in the need for self-defense.

### B

In a related argument, the defendants contend that a statutory contradiction exists between the first sentence of section 9—2(c) (requiring the defendant to prove an unreasonable belief) and sections 3—2(b), 7—1, and 7—14, and the second sentence of section 9—2(c) (requiring the State to prove an unreasonable belief).

(Ill. Rev. Stat. 1987, ch. 38, pars. 3—2(b), 7—1, 7—14, 9—2(c).) The defendants' argument, however, misconstrues the nature of the burdens of proof where a defendant raises the affirmative defense of self-defense. As previously discussed, the first degree murder statute explicitly states that first degree murder occurs where a person kills another individual *without lawful justification*. (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a).) One of the recognized justifications to first degree murder is the affirmative defense of self-defense. Section 7—1 of the Criminal Code provides in relevant part:

> "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." Ill. Rev. Stat. 1987, ch. 38, par. 7—1.

Once an affirmative defense is raised, the State has the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all the other elements of the offense. (Ill. Rev. Stat. 1987, ch. 38, par. 3—2(b).) Thus, when a murder defendant asserts self-defense, the State must prove *more* than the three elements of first degree murder. The State must also prove that the murder was not carried out in self-defense, and that the defendant's use of force was not legally justified. *People v. Williams* (1974), 57 Ill. 2d 239.

After the State establishes the elements of murder in accordance with section 9—1, the trier of fact next addresses the issue of lawful justification. In order to instruct the jury on self-defense,[2] the defendant must establish some evidence of each of the following elements:

---

[2] A self-defense and a voluntary manslaughter (now second

(1) force is threatened against a person; (2) the person threatened is not the aggressor; (3) the danger of harm was imminent; (4) the threatened force was unlawful; (5) he actually and subjectively believed a danger existed which required the use of the force applied; and (6) his beliefs were objectively reasonable. (See *People v. Anderson* (1992), 234 Ill. App. 3d 899, 906; *People v. Willis* (1991), 217 Ill. App. 3d 909, 916.) If the State negates *any one* of the self-defense elements, the defendant's claim of self-defense must fail. The trier of fact must then find the defendant guilty of either first or second degree murder. Therefore, the defendant's *unreasonable* belief is not necessarily an element the State must disprove in defeating a claim of self-defense. Rather, it is only one of the six enumerated factors which the State may choose to attack to rebut a claim of self-defense. Indeed, the State could also defeat a self-defense claim by proving the absence of any threat of force against the defendant, that the defendant was the aggressor, the absence of a danger of imminent harm, or a lack of unlawful force.

Where evidence of both first and second degree murder is presented and the defendant advances a claim of self-defense, the statute expressly states that the *State* bears the burden of proving beyond a reasonable doubt not only the elements of first degree murder, but also that the defendant was not justified in using the force that he used. (Ill. Rev. Stat. 1987, ch. 38, par. 9—2(c).) If the State fails to prove that the defendant was *not justified* in using the force that he used, then the jury must find the defendant not guilty of first degree murder and its deliberations end. If the State, however, has successfully negated the defendant's claim of self-defense and

degree murder) instruction should be given when any evidence is presented showing the defendant's subjective belief that use of force was necessary. *People v. Lockett* (1980), 82 Ill. 2d 546, 552.

has proven each of the other elements of first degree murder, then, and only then, may the jury proceed to a determination of second degree murder.

To summarize, when a defendant is found guilty of second degree murder, the trier of fact has, in essence, concluded that the evidence that the defendant has offered was not sufficient to support his claim of self-defense. The defendant, however, has proven by a preponderance of the evidence the existence of a mitigating factor sufficient to reduce the offense of murder to second degree murder. The defendant is not compelled to show that he had an unreasonable belief in the necessity for the use of force to obtain a second degree murder conviction. Rather, after the defendant has presented the best evidence for his defense, the trier of fact has concluded that the evidence only supports a finding of second degree murder and not absolute justification for the defendant's actions.

## C

Before leaving this issue, we address the defendants' claim that the alleged statutory contradiction between the burdens of proof previously discussed presents a situation analogous to the grave error found in *People v. Reddick*, 123 Ill. 2d at 184. In *Reddick*, the jury received instructions on both murder and voluntary manslaughter. The Illinois Pattern Jury Instruction on voluntary manslaughter placed the burden of proving the mitigating factors upon the *State*. The murder instructions, however, made no mention of this requirement. In *Reddick*, this court found:

> "[T]he instructions ***, when read together, erroneously state the burdens of proof on the issues of whether the defendants acted under either intense passions or unreasonable beliefs that their actions were justified. *** These instructions essentially assure that, if the jury follows them, the jury cannot possibly convict a defendant

of voluntary manslaughter. The reason is that even if a mitigating [factor] is proved, it will have been *proved by the defendant, not the People.*" (Emphasis added.) *Reddick*, 123 Ill. 2d at 194-95.

As previously discussed, subsequent to this court's holding in *Reddick*, the General Assembly enacted Public Act 84—1450, which abolished the offense of voluntary manslaughter and substituted for it the offense of second degree murder. By this same enactment, the General Assembly also specified that the *defendant* shall have the burden of proof regarding the mitigating factors. *Reddick*, 123 Ill. 2d at 199.

This court has held that certain instructions, such as the burden of proof and elements of the offense, are essential to a fair trial and that the failure to give such instructions constitutes grave error when, viewing the record as a whole, it appears that the jury was not apprised of the State's burden of proof. (*Reddick*, 123 Ill. 2d at 184; *People v. Berry* (1984), 99 Ill. 2d 499; *People v. Roberts* (1979), 75 Ill. 2d 1, 13; *People v. Jenkins* (1977), 69 Ill. 2d 61.) We do not find that the statutory scheme for first and second degree murder and accompanying jury instruction presents a *Reddick*-type problem that precludes a jury from properly returning a second degree murder verdict. Unlike the current scheme, the previous murder/voluntary manslaughter statutory scheme was silent on the issue of which party bears the burden of proving the mitigating factors of voluntary manslaughter. (Compare Ill. Rev. Stat. 1985, ch. 38, pars. 9—1, 9—2, with Ill. Rev. Stat. 1987, ch. 38, pars. 9—1, 9—2.) The statutory scheme for first and second degree murder, together with the accompanying jury instructions, do not mislead or confuse the jury. Accordingly, we reject the defendants' argument in this regard.

For the reasons stated, we uphold the constitutionality of the Illinois homicide scheme for first and second

degree murder. We therefore affirm the judgments of the appellate court.

*No. 75161—Affirmed.*
*No. 75647—Affirmed.*