2026 IL App (1st) 241151-U
No. 1-24-1151
Order filed April 29, 2026

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 231189638 |
| | ) | |
| AMYA WORDLOW, | ) | Honorable |
| | ) | Regina Mescall, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction for misdemeanor battery is affirmed where (1) the court did not err in determining that defendant was ineligible for the affirmative defense, defense of another, where the individual whom defendant purported to defend was the initial aggressor, and (2) the evidence was sufficient to find her guilty beyond a reasonable doubt.

¶ 2    Following a bench trial, defendant Amya Wordlow was found guilty of misdemeanor battery and sentenced to 12 months' supervision, and other conditions.[1] On appeal, defendant contends that the court erred when it determined that she was ineligible to invoke the affirmative

_____

[1] Although in the record on appeal, including the charging instruments, defendant's first name appears as "Amaya," she testified that the correct spelling of her first name is "Amya."

defense of defense of another, and that the State failed to present sufficient evidence to disprove that defense. For the following reasons, we affirm.

¶ 3    Defendant was charged with one count of misdemeanor battery (720 ILCS 5/12-3(a)(1) (West 2022)) for allegedly striking Kyzele Buford in the face, head, and body on May 23, 2023. Defendant's mother, Angela Buchanan, was also charged with two counts of battery for allegedly striking Buford and Buford's aunt, Cherry Powell. Defendant and Buchanan were tried in separate but simultaneous bench trials. The record does not reflect that defendant raised an affirmative defense prior to trial.

¶ 4    Powell testified that on the night of the incident, she stood near Buford's vehicle in a vacant lot near their home. Buford sat in the passenger seat of the vehicle and a friend sat in the driver's seat. Defendant drove up in another vehicle with Buchanan in the passenger seat. Defendant parked the vehicle facing the opposite direction, so Buford and Buchanan sat across from each other in the different vehicles.

¶ 5    According to Powell, Buchanan exited defendant's vehicle and, through Buford's window, spoke to Buford's friend about Buford. Powell understood Buchanan to be intoxicated because Powell could "smell it." Powell told Buford to roll up her window, and as Buford did so, Buchanan declared, "that B she rolling up the window, she see me talking to him." The interior of Buford's vehicle "was getting hot," and so Buford exited the vehicle while Buchanan continued to make "threats" and "comments."

¶ 6    Buchanan suddenly swung at Buford and missed. Defendant, who had exited the vehicle and was standing on the first floor of a nearby building, ran toward the women and tackled Buford. Buchanan kicked Buford in the head, and defendant struck Buford while on top of her.

¶ 7    On cross-examination, Powell reiterated that she told Buford to roll up the windows. Buford exited the vehicle so that Powell stood between Buford and Buchanan while Buchanan threatened Buford.

¶ 8    On redirect examination, Powell clarified that Buchanan first "tried to swing and hit [Buford] and she missed" and that defendant then tackled Buford. Defendant continued to punch Buford as Buford tried to rise. Defendant and Buford fought on the ground for four to five minutes, and Buford had 10 or more visible injuries after the incident.

¶ 9    Buford identified Buchanan and defendant in court and testified that they were her neighbors. On the night of the incident, defendant and Buchanan pulled alongside Buford as she sat in the passenger seat of a vehicle, talking to Powell, who stood outside the passenger door. Buchanan said hello to Buford's friend in the driver's seat, and then said, "look at that B *** I wish you would say something," referring to Buford. Powell told Buford to roll up her window. Buford did so, and Buchanan "instantly got upset."

¶ 10    Buford exited the vehicle, and Buchanan approached her, calling her names. Buford stated that she wanted to go inside her home with Powell. Buchanan moved closer, said she "didn't care," swung at Buford with a closed fist, and missed. Buford stated that she did not want to fight or speak with Buchanan. Buchanan said, "You know what, F it," and punched Buford in the face. Defendant, whom Buford last saw talking to a neighbor near the neighbor's home, then "came out of nowhere" and tackled Buford on the concrete. Buchanan kicked Buford in the head once, and defendant struck Buford at least 20 times. Buford sustained bruising on her elbows, shoulders, knee, face, neck, and back, and a cut and bruise under her eye.

¶ 11    The State entered into evidence and published to the court eight photographs of Buford's injuries. The photographs, which are included in the record on appeal and have been viewed by this court, depict scrapes and abrasions on Buford's elbows and shoulder and a small cut under one eye. Her elbow injuries include peeling, exposed skin, and open wounds.

¶ 12    On cross-examination, Buford elaborated that, while the women sat in their vehicles, Buchanan stared at Buford and said to Buford's friend, "What was that B looking at, I wish she would say something." Buford rolled up the window because this was not "the first altercation." As Buford approached Powell, Buchanan swung at Buford and missed. Buchanan walked away, then turned back and struck Buford. Defendant then tackled Buford.

¶ 13    On redirect examination, Buford confirmed the order of events, adding that defendant and Buchanan "ganged up" on her after defendant tackled her.

¶ 14    Defendant testified that on the day of the incident, she and Buchanan parked near Buford's vehicle. They spoke only to Buford's friend Campo, who sat in the driver's seat of Buford's vehicle, because they "never" talk to Buford. Buford rolled up her window, and Buchanan stated, "look at that, she's ignorant; why would she do that; she's ignorant." At the time, defendant did not see anyone else present besides herself, Buchanan, Buford, and Campo.

¶ 15    As defendant and Buchanan carried their belongings from their vehicle toward their home, Buford exited her vehicle and said to Buchanan, "oh, you ain't gon' do nothing; what you say about me." Defendant intervened, stating, "You're not going to fight my mom for anything." Buford grabbed defendant by the shirt, tearing it, and they "both tumbled over." The two women grabbed at each other while on the ground.

¶ 16    Defendant testified that she did not trade punches with Buford, but might have choked or grabbed Buford as they fought on the ground. Campo separated the combatants, and defendant and Buchanan retrieved their belongings from the ground and went home. Defendant sustained bruises and scrapes in the fight, and she filed a police report against Buford that day.

¶ 17    On cross-examination, defendant testified that she first told Buford not to hit Buchanan. Defendant denied tackling Buford but admitted to choking Buford while on the ground.

¶ 18    On redirect examination, defendant stated that she was defending herself while on the ground with Buford.

¶ 19    In closing arguments, defense counsel asserted that the incident at most amounted to mutual combat, and that defendant acted in self-defense and in defense of Buchanan.

¶ 20    The court found defendant guilty of a single count of battery. The court recalled that, per each witness's testimony, Buchanan spoke first and that Buford rolled up the window, indicating an effort to disengage. The court added that Buchanan then felt slighted and called Buford ignorant, noting that Buchanan was "the one that gets upset," and "the first person here to feel slighted."

¶ 21    The court found Buford's and Powell's testimonies credible, particularly as to Buchanan's unsuccessful first punch, explaining that "if they have an interest, bias, and motive to lie, they may say she punched me in the face, keep it clean." The court noted that although testimony conflicted over whether defendant tackled Buford, both women fell to the ground. The court found defendant's testimony less credible and determined that Buchanan was the initial aggressor and that mutual combat did not apply.

¶ 22    The court informed counsel both for defendant and Buchanan that the record lacked the evidence to support self-defense and defense of another because "the initial aggressor [sic] by your

clients" contradicted the defense. The court added that the photographs of Buford's injuries corroborated her testimony that she had been on the ground, suffering strikes to her face and body, and noted that defendant had testified to, and the photographic evidence supported, Buford's injuries.

¶ 23    The court sentenced defendant to 12 months' supervision, no contact with Powell or Buford in the common areas of their building, anger management, and drug and alcohol evaluation.

¶ 24    Defendant filed a motion to reconsider the finding of guilt or for a new trial challenging the sufficiency of the evidence in both determining the initial aggressor and in proving a battery. Defendant also filed a motion to reconsider sentence, arguing that her sentence was excessive. She later supplemented the motion to reconsider the finding of guilt, asserting, *inter alia*, that the court's reasoning for finding Powell and Buford more credible than Buchanan and defendant was "bizarre."

¶ 25    At a hearing on the motions, defense counsel argued, *inter alia*, that the evidence at trial was insufficient to prove defendant's guilt beyond a reasonable doubt. Specifically, counsel challenged the court's determination that Buchanan was the initial aggressor and that defense of person did not apply. Counsel further argued that the State failed to prove every material allegation beyond a reasonable doubt.

¶ 26    Before addressing the merits of the parties' arguments, the trial court struck the drug and alcohol evaluation requirements from defendant's supervision, noting no evidence established that defendant was under the influence of intoxicants at the time of the incident.

¶ 27    In denying defendant's motion to reconsider the finding of guilt, the trial court noted that defendant's pleading lacked legal authority and contained "everything from sufficiency of the

evidence" to alleging "bizarre things the court said." The court explained that the pleading's deficiencies posed difficulty in discerning the law or legal authority upon which counsel relied.

¶ 28    As to the sufficiency of the evidence, the court reminded the parties that "the testimony of a single witness is sufficient to establish guilt beyond a reasonable doubt, so long as the testimony is positive and the witness credible." The court noted that mutual combat did not apply, stating that the alleged victims were not impeached "at all," and that their testimony remained consistent. The court further informed defendant that its comments were not "bizarre," but spoke to the factfinder's credibility assessment of the witnesses based on their testimonies. The court noted that in contrast to the alleged victims' unimpeached testimonies, defendant's testimony was "all over the place." The court then denied defendant's motion.

¶ 29    On appeal, defendant first contends that the trial court erred in interpreting the Illinois statute for defense of person (720 ILCS 5/7-1, 7-4 (West 2022)) when it found that she "could not assert *** justified use of force in defense of another as an affirmative defense because Buchanan was the initial aggressor." She further contends that the State failed to rebut her affirmative defense beyond a reasonable doubt.

¶ 30    The State responds that it met its burden of proof as to battery, and that the trial evidence negated defendant's claim that she was acting in defense of herself or of another.  In the appendix to its brief, the State includes images from Google "Street View" of the exterior area surrounding the apartment building where the incident occurred.

¶ 31    In reply, defendant requests that we strike the State's appendix where the Google images "were not offered at trial, no witness verified that these photographs depict the location where the altercation occurred, and no witness testified that these photographs truly and accurately reflect

the appearance of that location on the date of the altercation." See *Ory v. City of Naperville*, 2023 IL App (3d) 220105, ¶ 21 (collecting cases) (noting Google Earth images depicting a sidewalk defect are inadmissible absent proper authentication).

¶ 32    After briefing, the State filed a motion in this court to deny defendant's request to strike the appendix and for leave to cite additional authority. In the motion, the State argued that in *People v. De La Cruz*, 2024 IL App (2d) 240381-U, ¶ 10, n.2, a panel of the Second District of this court "ostensibly on its own initiative, accessed and relied on" Google images to note that a business appeared "closed and shuttered as of July 2024." The State asserted that it asked not that this court take judicial notice of facts gleaned from the images, but instead provided them "only to furnish the Court with general information about the location at which the battery *** occurred."

¶ 33    On July 18, 2025, we entered an order taking the State's motion with the case. We first address the motion.

¶ 34    "A reviewing court may not supplement the record with a document not considered by the trial court." *People v. Alvarez-Garcia*, 395 Ill. App. 3d 719, 726 (2009); see also *People v. Cline*, 2022 IL 126383, ¶ 32 (courts cannot use judicial notice to "introduce new evidentiary material not considered by the fact finder during its deliberations"). However, an appellate court may take judicial notice of facts that are not "subject to reasonable dispute" in that they are either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Ill. R. Evid. 201(a), (b), (f) (eff. Jan. 1, 2011); *People v. Washington*, 2023 IL 127952, ¶ 52.

¶ 35    Such facts include locations of streets and distances, and other information from mainstream internet sites like Google Maps. *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167,

177-78 (2003) (mapping distance in appeal involving claim of forum *non conveniens*); *People v. Clark*, 406 Ill. App. 3d 622, 632-34 (2010) (collecting cases) (noting that courts "generally will not take judicial notice of the *precise* location of a single city lot") (emphasis in original); *People v. Davila*, 2022 IL App (1st) 190882, ¶ 44, n.6 (mapping distance between crime scene and defendant's home).

¶ 36 Here, the State submitted the images to "furnish the Court with general information about the location at which the battery *** occurred," directing this court to the "three story, multi-unit apartment building" and "the building's exterior and surrounding area," features which are generally not subject to judicial notice. See *Clark*, 406 Ill. App. 3d at 634. Moreover, the incident occurred in May 2023. The images, notated as captured by Google in June 2022, predate the incident by 11 months. Accordingly, we deny the State's motion. *Washington*, 2023 IL 127952, ¶ 52. We grant defendant's request to strike the appendix.

¶ 37 Defendant, as noted, claims the court erred in concluding that she was unable to raise the affirmative defense of defense of person because her mother was the initial aggressor. Defendant seeks *de novo* review, asserting that the trial court applied the incorrect legal standard under sections 7-1 and 7-4 of the Criminal Code (720 ILCS 5/7-1, 7-4 (West 2022)) because "[n]othing in the language of § 7-4 limits the ability of a defendant who was not the initial aggressor to raise the affirmative defense when acting *in defense of* a person found to have been the initial aggressor." (Emphasis in original.).

¶ 38 The record reflects that defendant did not raise this issue at trial or in her posttrial motion. Ordinarily, a defendant "must both specifically object at trial and raise the specific issue again in

a posttrial motion to preserve any alleged error for review." *People v. Brand*, 2021 IL 125945, ¶ 32.

¶ 39 Yet, the State's brief only addresses defendant's argument for sufficiency of the evidence and does not allege that defendant forfeited the issue of the applicable law. Because forfeiture is "in the nature of an affirmative defense that the State may either raise, waive, or forfeit," and the State has not raised the matter, we address the merits of defendant's argument. *People v. Phillips*, 2022 IL App (1st) 181733, ¶ 156 (finding the State "forfeited any claim of forfeiture" where it failed to argue defendant's forfeiture in its brief).

¶ 40 "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force." 720 ILCS 5/7-1(a) (West 2022). However, initial aggressors—individuals who first provoke the use of force against themselves—may not avail themselves of this affirmative defense. *Id.* § 7-4(b), (c).

¶ 41 Moreover, although defendant posits that her argument presents a novel question of statutory interpretation, Illinois courts have long held that those acting in defense of the initial aggressor are likewise ineligible for the affirmative defense of defense of person. See *People v. Batac*, 259 Ill. App. 3d 415, 428 (1994) (stating that "in Illinois, self-defense and defense of others are combined under the statute defining justifiable use of force in defense of person"); *People v. Nunn*, 184 Ill. App. 3d 253, 270-71 (1989) (defendants' use of force to defend their codefendant was not justified where that codefendant was the aggressor against the victim); see also *People v. Jeffries*, 164 Ill. 2d 104, 128 (1995) (when invoking defense of person, defendant must establish, *inter alia*, that "the person threatened is not the aggressor"). Defendant's briefs on appeal neither

acknowledge this line of authority, nor present any compelling reason to depart from it. Accordingly, the trial court did not err when it determined that defendant was unable to rely on defense of another when acting in defense of an initial aggressor.

¶ 42    Defendant next contends that the evidence presented was insufficient to prove her guilt beyond a reasonable doubt. Specifically, she claims that "[t]he affirmative defense of justified use of force in defense of a person turns on the reasonableness of [her] belief" that (1) "it was necessary to use force to defend her mother from the use of force by Buford," (2) "use of force by Buford was imminent," and (3) "use of force by Buford was unlawful." Defendant maintains that the State failed to disprove her "reasonable beliefs" as to her purported defense of Buchanan.

¶ 43    When a defendant asserts that the evidence is insufficient to sustain her conviction, we must determine whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the elements proved beyond a reasonable doubt. *People v. Cline*, 2022 IL 126383, ¶ 25. We will not retry the defendant, nor "substitute our judgment for that of the trier of fact, who is charged with assessing the credibility of the witnesses and the weight to be accorded their testimony, resolving conflicts in the evidence, and drawing reasonable inferences therefrom." *People v. Padilla*, 2021 IL App (1st) 171632, ¶ 42. Rather, we must allow all reasonable inferences from the record in favor of the State. *Cline*, 2022 IL 126383, ¶ 25.

¶ 44    The testimony of a single witness, if positive and the witness credible, is sufficient to convict. *People v. Daniels*, 2025 IL App (1st) 230823, ¶ 20. We will only find testimony insufficient "where the record compels the conclusion that no reasonable person could accept it beyond a reasonable doubt." *Padilla*, 2021 IL App (1st) 171632, ¶ 42. We will reverse a

defendant's conviction "only if the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *Id.*

¶ 45    At trial, defendant admitted to choking Buford and invoked defense of person as an affirmative defense. As stated, individuals who initially provoke the use of force against themselves, and those acting in defense of an individual who initially provoked the use of force, may not avail themselves of this affirmative defense. See 720 ILCS 5/7-1(a); 7-4(b), (c) (West 2022); *Jeffries*, 164 Ill. 2d at 127-28.

¶ 46    When asserting defense of person, a defendant must establish some evidence that: (1) force was threatened against another person; (2) the person threatened was not the aggressor; (3) the danger of harm was imminent; (4) the threatened force was unlawful; (5) the defendant actually and subjectively believed a danger existed which required the use of the force applied; and (6) the defendant's beliefs were objectively reasonable. *Jeffries*, 164 Ill. 2d at 127-28.

¶ 47    When a defendant raises the theory of self-defense or defense of person, the State must prove all elements of the underlying offense and disprove the affirmative defense beyond a reasonable doubt. *People v. Gray*, 2017 IL 120958, ¶ 50. An affirmative defense fails if the State negates any one of the elements of the affirmative defense. *Id.* But when a defendant fails to present evidence to satisfy the required elements of the affirmative defense, the burden of proof to negate the elements beyond a reasonable doubt never passes to the State. *People v. Willis*, 217 Ill. App. 3d 909, 919 (1991).

¶ 48    Viewing the evidence in the light most favorable to the State, a rational trier of fact could have concluded, as the court did, that the evidence portrayed Buchanan as the initial aggressor. The record shows, and the trial court noted, that the parties agreed that: Buchanan exited her

vehicle first; Buford rolled up her window, which the court interpreted as effort to disengage given their history; Buchanan became upset when Buford rolled up her window; and Buchanan called Buford "ignorant."

¶ 49    The trial court found that Buchanan spoke first, exited her vehicle first, swung first, and struck first before defendant intervened. In doing so, the court explained that the victims' testimonies were more credible than defendant's testimony: in particular, the victims' testimonies offered factual consistency on the locations of the combatants and the order of events. In contrast, the court found defendant's testimony incredible. Based upon the undisputed facts and its own credibility assessment, the court concluded that Buchanan was the initial aggressor in the conflict. We will not supplant the trial court's findings where the record fails to compel us to conclude that no reasonable person could accept such a determination beyond a reasonable doubt. *See Padilla*, 2021 IL App (1st) 171632, ¶ 42.

¶ 50    Although we find the record unclear as to whether the court found that defendant met her initial burden in proving the six required elements of the affirmative defense, or whether the State negated an element after the burden shifted, Buchanan's status as the initial aggressor remains fatal to defendant's claim. That is, either defendant failed to establish, or the State later negated, the second element of defense of another where Buchanan, as the "threatened person," was not the aggressor. *Jeffries*, 164 Ill. 2d at 127-28 (defendant must first show evidence of each element of the affirmative defense; defendant's claim fails where the State negates even one element).

¶ 51    We reject defendant's argument that the State failed to disprove the affirmative defense "because the reasonableness of [her] belief went unchallenged at trial." The State was not required

to challenge defendant's belief because Buchanan's status as the initial aggressor alone defeats the defense. *Id.*

¶ 52 We deny the State's motion to dismiss defendant's request to strike the State's appendix, grant defendant's request to strike the State's appendix, and affirm the judgment of the trial court.

¶ 53 Affirmed.