# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Johnson*, 2013 IL App (1st) 103361

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SYDNEY JOHNSON, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-10-3361 |
| Filed<br>Rehearing denied | March 15, 2013<br>April 5, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction and sentence for second degree murder were upheld where the evidence and testimony supported the verdict that defendant fatally stabbed the victim in a gang-related fight, the evidence supported the trial court's decision to *sua sponte* instruct the jury on second degree murder, the exclusion of the alleged inculpatory statements made by an eyewitness was not an abuse of discretion, and defendant's right to confrontation was not violated when a forensic scientist was allowed to testify about her testing of certain evidence. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CR-13171; the Hon. Nicholas Ford, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on          Michael J. Pelletier, Alan D. Goldberg, and Jennifer L. Bontrager, all of
Appeal              State Appellate Defender's Office, of Chicago, for appellant.

                    Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Amy
                    M. Watroba, and Judy L. DeAngelis, Assistant State's Attorneys, of
                    counsel), for the People.

Panel               JUSTICE REYES delivered the judgment of the court, with opinion.
                    Justices Hall and Gordon concurred in the judgment and opinion.

## OPINION

¶ 1    Following a jury trial, defendant Sydney Johnson was convicted of second degree murder and was sentenced to a prison term of 18 years. Defendant contends on appeal: (1) he was not proven guilty beyond a reasonable doubt; (2) the trial court erred by *sua sponte* instructing the jury on second degree murder; (3) the trial court erred in refusing to allow him to question a witness about inculpatory statements the witness allegedly made; (4) he was denied his right of confrontation when the trial court permitted the State to present forensic evidence through the testimony of a witness who did not perform the testing or analysis; (5) the trial court erred when it refused to permit him to impeach a witness regarding the witness's alleged mental illness; (6) the trial court improperly relied upon his prior out-of-state felony convictions, which qualified him for sentencing as a Class X offender; and (7) his sentence was excessive. We hereby affirm the judgment of the trial court.

¶ 2                                BACKGROUND

¶ 3    Defendant was charged with first degree murder for the fatal stabbing of the victim, Daniel Santoyo. The charges against defendant were the result of an altercation between defendant and the victim during the early evening hours of June 7, 2008, near 49th Street and Marshfield Avenue in Chicago.

¶ 4    James Godfrey testified at trial that on the day of the stabbing, James and the victim and their families were returning from the beach when they stopped at their friend Alfredo's[1] home, which was located near 49th Street and Marshfield Avenue. While James went inside Alfredo's home, the victim went across the street to William Johnson's home.[2] James went to find the victim, and as they were leaving, defendant and his cousin Lewis (Rookie) Johnson were standing in the doorway. Defendant said to James and the victim, "what the

_____

[1]Alfredo's last name does not appear in the record.

[2]Defendant and William Johnson are not related.

-2-

f*** are you's doing here, this ain't your hood no more. Get the f***out of here." Defendant further said, "there ain't no Souls no more over here." James explained that "Souls" referred to the street gang the Latin Souls, to which James and the victim had belonged. Defendant had also been a Latin Soul but at the time of the stabbing was a member of the Gangster Disciples street gang. The four men walked to the sidewalk, with defendant and the victim arguing. Defendant then struck the victim in the forehead and the victim punched defendant. The victim and defendant continued fighting while James ran to his automobile to retrieve a pipe. James attempted to give the pipe to the victim to use in the altercation, but the victim threw down the pipe and told James he only wanted to fight with his fists. Lewis then threw a brick at the victim before fleeing the scene. James turned to go back to his vehicle when he heard his wife and the victim's wife yelling, "he's stabbing him, he's stabbing him, he's stabbing him." James turned around and observed the victim holding his side and defendant was standing in the middle of the street. Defendant then fled the scene. The victim was wearing a sleeveless T-shirt, which was ripped during the fighting but never came off. Defendant was wearing a white T-shirt as well as a sleeveless t-shirt. On cross-examination, James testified that the victim was winning the fight against defendant. James stated he did not actually observe defendant stab the victim because he had turned away from the fight to return to his vehicle. On redirect examination, James stated that defendant and the victim were fighting near two parked automobiles and nobody else was fighting or standing beside them. He further stated that Lewis had already fled the scene before the stabbing occurred.

¶ 5    James's wife, Dawn Godfrey, testified she did not know defendant or Lewis before the day of the stabbing. She and the victim's wife and their children were waiting for James and the victim in their vehicle, which was parked about 10 to15 feet away from the altercation. She heard defendant tell James and the victim to "get off this block" and "you don't belong here." The victim had been wearing a sleeveless shirt, which he ripped off during the fight and defendant had been wearing a T-shirt. She observed defendant and the victim fighting near two parked automobiles and the victim was on top of defendant. Dawn observed defendant stab the victim about seven to nine times. She did not observe where the knife came from but described it as about four inches long. Nobody else was involved in the fight and Lewis fled the scene when the stabbing commenced. After the stabbing, defendant ran to the middle of the street, held the knife up, and said, "you want some, bitch," before fleeing the scene. Several days later, on June 12, Dawn viewed a lineup, identifying defendant as the person who stabbed the victim. On cross-examination, Dawn denied telling investigators from the public defender's office she had not observed a knife. She also denied telling investigators that Lewis had been standing near the fight. Dawn admitted that after the stabbing, she reviewed a photo array but was unable to identify defendant because the photographs were "grainy." She denied telling investigators that "all black people look alike."

¶ 6    The victim's wife, Megan Reilly, testified she also did not know defendant before the day of the stabbing. She heard defendant and the victim arguing and defendant told the victim to "get off the block." Megan observed defendant hitting the victim with something, but could not see what it was. Although, when defendant fled the scene, she observed that he had a knife in his hand. The victim was wearing a gray, sleeveless shirt, but had ripped it off

before the fight began. She was unable to remember whether defendant was wearing a shirt after the fight, but defendant had on a white shirt during the fight. Several days later, on June 12, Megan viewed a lineup and identified defendant as the individual who stabbed the victim. On cross-examination, she admitted she was not able to identify defendant in a photo array at the scene. On redirect examination, Megan stated she observed defendant make a jabbing motion, but did not observe the knife while defendant was making the jabbing motions. She further stated there was nobody else near defendant and the victim when defendant was making the jabbing motions.

¶ 7 Defendant's cousin, Lewis Johnson, testified that prior to the stabbing, he was at the "candy store," having his hair braided when defendant entered.[3] He and defendant went to William Johnson's home where they encountered James and the victim. Defendant told James and the victim they did not belong in the neighborhood. Defendant said he was a "Soul Killer," which was a reference to James and the victim's gang affiliation. When defendant and the victim commenced fighting, James approached Lewis and started swinging the pipe at Lewis and defendant, so Lewis threw two or three bricks at James. The victim's friend, Alfredo, whom they also referred to as "Smoke Dog," came outside and both Alfredo and the victim were "jumping" on defendant. Lewis observed defendant swing at the victim with a knife and then observed the victim bleeding. Lewis then fled the scene and returned to the "candy store." Defendant came running in shortly thereafter with a knife in his hand and he was not wearing a shirt. Prior to the stabbing, defendant had been wearing a white T-shirt and a white tank top. Defendant wrapped up the knife and placed it in a bag.

¶ 8 During Lewis's testimony, the State asked the trial court for permission to treat Lewis as a hostile witness, which the trial court permitted. The State then impeached Lewis with his grand jury testimony in which he testified the victim had taken the pipe from James but threw it on the ground saying he did not need to fight with the pipe. The State also impeached Lewis with his grand jury testimony in which he testified he had observed defendant's knife prior to the stabbing and defendant carried the knife "all the time." The State further impeached Lewis with his grand jury testimony in which he testified that when defendant ran into the "candy shop" he asked for peroxide to clean the knife.

¶ 9 On cross-examination, Lewis denied stabbing the victim and denied telling anyone he stabbed the victim. On redirect examination, Lewis stated that several family members were "putting pressure on him" and "threatening him" regarding the stabbing.

¶ 10 Chicago Police Officer Thomas Ellerbeck recovered several items from the scene including a brick, half a brick, a white T-shirt with red stains, a sleeveless white shirt with a red stain and a gray sleeveless shirt.

¶ 11 Cindy Lee, a forensic scientist, tested the evidence recovered from the scene for the presence of blood. No blood was found on the bricks or the gray, sleeveless shirt. The white T-shirt and white, sleeveless shirt tested positive for the presence of blood.

¶ 12 Katherine Martin, a forensic scientist employed at the Illinois State Police crime lab, testified she conducted tests on the evidence she received, which was a white, sleeveless shirt

---

[3]The "candy store" is actually a home where a woman sells candy and braids hair.

and a bloodstain from that shirt. She determined that the shirt contained a mixture of two DNA profiles and defendant could not be excluded from the profile, but the victim could be excluded. She also stated that when she applied statistics to the profile she found that 1 in 560 blacks, 1 in 1,300 whites and 1 in 19 Hispanics could not be excluded from having contributed to the mixture. Martin further testified the bloodstain matched the victim's profile, but not defendant's profile.

¶ 13    Dr. James Filkins testified he performed the victim's autopsy. The victim had stab wound injuries to his lungs, liver, pulmonary artery, and various muscle tissue. The victim also sustained the following stab wounds: two to his left shoulder, located on the top and front of the shoulder; two to his chest, which involved his right lung, pulmonary artery and liver; one to his right hip; and three to his back, located on the upper left (which struck the lung), right side and lower left side of his back.

¶ 14    Miguel Soria testified for the defense. At the time of the stabbing, Soria lived at 4934 South Marshfield Avenue. At approximately 6 p.m. on that day, Soria was outside his home with his wife and children. He observed some Hispanic men arguing with some black men and then one of the Hispanic men and one of the black men started fighting in the street. Soria was about 40 feet away from the altercation. He noticed the Hispanic man was holding a pipe but was not using it in the fight. Soria never observed a knife in either of the men's hands. As the two men were fighting, he observed another black man with a knife in his hand running toward the fight. The man with the knife started poking the Hispanic man with the knife. Soria called 911 after he observed what happened, but no police officers came to speak to him. On cross-examination, he admitted he was unable to recognize defendant and did not know whether defendant was involved in the fight. Soria also stated he did not observe anyone throw a brick during the fight.

¶ 15    Marisa Figueroa, who is a criminal defense investigator, testified she interviewed Dawn Godfrey and Dawn told Figueroa she did not observe a knife in defendant's hand. Dawn also told Figueroa she was unable to identify anyone from the photo array because the pictures were very grainy and of poor quality and "all black people look alike."


¶ 16                                    ANALYSIS
¶ 17                              I. Reasonable Doubt
¶ 18    Defendant first contends the State failed to prove him guilty of second degree murder beyond a reasonable doubt because the eyewitness testimony and physical evidence suggested Lewis Johnson stabbed the victim.

¶ 19    When reviewing the sufficiency of the evidence in a criminal case, we must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *People v. Smith*, 185 Ill. 2d 532, 541 (1999). We will not reverse a criminal conviction unless the evidence is so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *People v. Rowell*, 229 Ill. 2d 82, 98 (2008). A reviewing court does not retry the defendant or substitute its judgment for that of the trier of fact with regard to the credibility of witnesses or the weight

to be given to each witness' testimony. *People v. Jackson*, 232 Ill. 2d 246, 281 (2009). Rather, we "carefully examine the evidence while bearing in mind that the trier of fact is in the best position to judge the credibility of witnesses, and due consideration must be given to the fact that the fact finder saw and heard the witnesses." *People v. Herman*, 407 Ill. App. 3d 688, 704 (2011).

¶ 20    Defendant first focuses on the stab wounds the victim suffered on the right side of the victim's body. Defendant maintains since he and the victim were facing each other when they were fighting and defendant's back was to the ground with the victim on top of him, defendant, who was right-handed, could not have reached across the victim's large, 250-pound body to stab the victim on the right side of the victim's body. Defendant also points to defense witness Miguel Soria's "unimpeached" testimony that "another young Black man" had a knife in his hand and "stabbed the Hispanic man."

¶ 21    Here, when we consider the testimony and evidence presented at trial, we find it supports the jury's verdict. First, defendant's contention that defendant did not stab the victim because defendant could not have inflicted the wounds to the right side of the victim's body, fails to consider the entirety of Dr. James Filkins' testimony. Dr. Filkins, who performed the victim's autopsy, testified the victim suffered stab wound injuries to his lungs, liver, pulmonary artery and various muscle tissue. The victim also sustained the following stab wounds: two to his left shoulder, located on the top and front of the shoulder; two to his chest, which involved his right lung, pulmonary artery and liver; one to his right hip; and three to his back, located on the upper left (which struck the lung), right side and lower left side of his back. The victim suffered multiple stab wounds to various parts of his body, which are consistent with the testimony that defendant and the victim were on the ground struggling as they fought one another.

¶ 22    Second, defendant's contention that Miguel Soria's "unimpeached" testimony "corroborates the physical evidence" is not persuasive. Although defendant states Soria's testimony corroborates the "physical evidence," defendant proceeds to argue that Soria's testimony should be believed because the other eyewitness testimony was inconsistent and therefore not believable. The jury heard Soria testify that another man ran up to the two individuals fighting and stabbed the victim. The jury also heard Soria's testimony that he never spoke with police officers after the incident regarding what he observed. The jurors did not find Soria's testimony credible or believable and rejected it when they returned a guilty verdict. Soria's testimony conflicted with the eyewitness testimony that only defendant and the victim were fighting and Soria was the only witness to testify that another individual stabbed the victim. Soria was also about 40 feet from the scene, whereas the other eyewitnesses were in close proximity to where the altercation was taking place. Further, Soria's testimony was also doubtful because he did not remember anyone throwing a brick during the fight whereas the other eyewitnesses testified as to a brick being thrown and at least one brick was recovered from the scene. It was for the jury to determine the credibility of the witnesses and the weight to be afforded their testimony. See *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). Here, the jury found the evidence was sufficient to sustain defendant's conviction for second-degree murder and this finding is not so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of defendant's guilt.

¶ 23                    II. Second Degree Murder Jury Instruction

¶ 24        Defendant contends the trial court erred by *sua sponte* instructing the jury on second degree murder over his objection. Defendant maintains the instruction deprived him of a fair trial because the instruction "usurped [his] right to plead not guilty and to persist in that plea, imposed an unfair burden on [him] that conflicted with his defense, and instructed the jury on an offense unsupported by the evidence, undoubtedly confusing the jurors and causing the compromise verdict."

¶ 25        Section 9-2 of the Criminal Code of 1961 (Code) provides that a person commits second degree murder when he commits first degree murder and a mitigating factor is present. 720 ILCS 5/9-2(a)(2) (West 2008). The elements of first and second degree murder are identical. *People v. Jeffries*, 164 Ill. 2d 104, 122 (1995). Second degree murder differs from first degree murder only in the presence of a mitigating factor, such as an alleged provocation or an unreasonable belief in justification. *People v. Porter*, 168 Ill. 2d 201, 213 (1995). Therefore, second degree murder is not a lesser-included offense, rather, it is a lesser-mitigated offense of first degree murder. *Jeffries*, 164 Ill. 2d at 122. Generally, a defendant cannot be convicted of an uncharged offense unless it is a lesser-included offense of the crime charged. This however, is not the case with second degree murder since section 9-2(c) of the Code provides that "[w]hen a defendant is on trial for first degree murder *** the defendant can be found guilty of second degree murder." 720 ILCS 5/9-2(c) (West 2008). For a defendant to be guilty of second degree murder, the State must first prove the defendant guilty of first degree murder beyond a reasonable doubt. 720 ILCS 5/9-2(c) (West 2008). The burden then shifts to the defendant to prove the existence of the mitigating factor by a preponderance of the evidence. 720 ILCS 5/9-2(c) (West 2008). The determination of whether a defendant is guilty of first degree murder or guilty of second degree murder is a question for the finder of fact. *People v. Simon*, 2011 IL App (1st) 091197, ¶ 52.

¶ 26        The purpose of jury instructions is to provide the jury with correct legal rules that can be applied to the evidence to guide the jury toward a proper verdict. *People v. Pierce*, 226 Ill. 2d 470, 475 (2007). The decision to give a certain instruction rests with the trial court, and we will not reverse its judgment absent an abuse of discretion. *People v. Mohr*, 228 Ill. 2d 53, 66 (2008). A trial court abuses its discretion if the jury instructions given are unclear, mislead the jury, or are not justified by the evidence and the law. *Mohr*, 228 Ill. 2d at 65-66.

¶ 27        Subsequent to the parties filing their briefs, on February 7, 2013, our supreme court issued its opinion in *People v. Wilmington*, 2013 IL 112938, which clarified the differences between lesser-mitigated and lesser-included offenses with regard to jury instructions.[4] The court held that a second degree murder instruction was not governed by the same legal principles as a lesser-included offense instruction. *Wilmington*, 2013 IL 112938, ¶ 44. The court explained that the defendant has the right to decide whether to submit an instruction on a lesser-included offense, noting the decision was " 'analogous to the decision of what plea to enter.' " *Wilmington*, 2013 IL 112938, ¶ 46 (quoting *People v. Brocksmith*, 162 Ill.

---

[4]We granted the State's motion to cite *People v. Wilmington*, 2013 IL 112938, as supplemental authority.

-7-

2d 224, 229 (1994)). A lesser-included offense instruction exposes the defendant to " 'potential criminal liability, which he otherwise might avoid if neither the trial judge nor the prosecutor seeks the pertinent instruction.' " *Wilmington*, 2013 IL 112938, ¶ 48 (quoting *People v. Medina,* 221 Ill. 2d 394, 405 (2006)). This, however, is not the case with the lesser-mitigated offense of second degree murder because the defendant can only be guilty of second degree murder if first proven guilty of first degree murder. Therefore, the second degree murder instruction does not subject a defendant to "potential criminal liability which he might otherwise avoid." *Wilmington*, 2013 IL 112938 ¶ 48.

¶ 28    Here, the trial court did not abuse its discretion when it instructed the jury on second degree murder because the instruction was supported by the evidence. First, the instruction did not "usurp" defendant's right to plead not guilty. Defendant maintained throughout trial that although he was engaged in a fight with the victim, he did not stab the victim. The evidence presented at trial did not support his theory. There was testimony that defendant was losing the fight and defendant had made stabbing motions at the victim during the fight. Therefore, there was evidence to support a second degree murder instruction if the jury believed defendant had an unreasonable belief in self-defense. As the supreme court determined in *Wilmington*, the considerations that a lesser-included offense instruction encompass are not the same for a second degree murder instruction. To find defendant guilty of second degree murder, the jury found the elements of first degree murder had been proven, but also found a mitigating factor present. The trial court's determination to *sua sponte* instruct the jury on second degree murder was not an abuse of discretion.

¶ 29                    III. Inculpatory Statements (Lewis Johnson)

¶ 30    Defendant contends the trial court abused its discretion when it prohibited the admission of alleged inculpatory statements made by Lewis Johnson pursuant to *Chambers v. Mississippi*, 410 U.S. 284 (1973); *People v. Tenney*, 205 Ill. 2d 411, 432-33 (2002). Prior to trial, defendant filed a motion *in limine* to admit as substantive evidence alleged hearsay statements from Lewis. The motion alleged Lewis made statements "to various people indicating that Lewis Johnson stabbed the decedent and that the defendant did not stab anyone." The motion further alleged Lewis admitted stabbing the victim to Tasha Dean, Kristi Maxwell and Shakitia Smith on the evening the stabbing occurred. Additionally, the motion alleged that several months prior to trial Lewis made statements to Latrice Johnson and Kenneth Reed indicating he stabbed the victim. The trial court found the statements inadmissible because the *Chambers* factors had not been met and denied the motion. Defendant did not renew the motion or make an offer of proof during the trial.

¶ 31    Testimony as to an out-of-court statement that is offered to establish the truth of the matter asserted is hearsay and is generally not admissible in evidence. *People v. Lawler*, 142 Ill. 2d 548, 557 (1991). However, evidence of an out-of-court statement made against the declarant's penal interest is admissible where justice requires and where sufficient indicia of the trustworthiness of the statement are present. *People v. Olinger*, 176 Ill. 2d 326, 357 (1997). Illinois courts have adopted and applied the four criteria outlined by the United States Supreme Court in *Chambers v. Mississippi*, 410 U.S. 284, 300-01 (1973), to demonstrate

trustworthiness of hearsay statements. The four criteria to consider in determining whether there are sufficient indicia of trustworthiness to render evidence of an out-of-court statement against penal interest admissible are: (1) whether the statement was made spontaneously to a close acquaintance shortly after the crime had occurred; (2) whether the statement is corroborated by other evidence; (3) whether the statement was self-incriminating and against the declarant's penal interest; and (4) whether there was an adequate opportunity to cross-examine the declarant. *Chambers*, 410 U.S. at 300-01. These criteria are merely guidelines and are not a condition precedent for a statement to come within the exception and be admitted. *People v. Tenney*, 205 Ill. 2d 411, 435-36 (2002). The primary consideration for admissibility is whether the statement was made under circumstances which provide considerable assurance of its reliability by objective indicia of trustworthiness. *Tenney*, 205 Ill. 2d at 435. A court's determination whether to admit evidence under the hearsay exception for a statement made against penal interest is within the sound discretion of the trial court, and its ruling will not be reversed absent an abuse of discretion. *People v. Bowel*, 111 Ill. 2d 58, 68 (1986).

¶ 32　　Defendant contends Lewis's statements bear sufficient indicia of reliability as set forth in *Chambers* and defendant should have been permitted to cross-examine Lewis about the statements. Defendant argues the statements should have been admitted since: (1) the statements were made to a family member within hours of the stabbing; (2) Miguel Soria's testimony and the physical evidence corroborated the statements; (3) the statements, which admitted stabbing the victim, were self-incriminating; and (4) Lewis was available for cross-examination.

¶ 33　　Here, the trial court did not abuse its discretion in prohibiting the admission of Lewis's alleged inculpatory statements. First, although defendant alleged the statements were made to three individuals the same day as the stabbing, as well as two individuals several months prior to trial, neither in the motion nor at the hearing on the motion did defendant provide any evidence that the alleged statements were actually made to these individuals. Defendant did not make an offer of proof or present the court with any evidence from the individuals to whom the statements were allegedly made. Further, at trial, Lewis denied stabbing the victim and denied making any statements that he stabbed the victim. As a result, the first factor is not satisfied. Second, the alleged statement was not corroborated by the evidence. Several eyewitnesses testified that only defendant and the victim were fighting and no one else approached them and stabbed the victim. Although Soria's testimony seemingly supported defendant's theory that Lewis stabbed the victim, the jury rejected his testimony. The second factor is also not satisfied. Third, if Lewis admitted stabbing the victim, the statement is self-incriminating and against his penal interest, thus satisfying the third factor. Fourth, Lewis was available for cross-examination, thus satisfying the fourth factor. As noted above, these four factors are merely guidelines and our primary consideration is whether the statement was made "under circumstances that provide considerable assurance of its reliability by objective indicia of trustworthiness." (Internal quotation marks omitted.) *Tenney*, 205 Ill. 2d at 435. The evidence presented at trial does not provide considerable assurance of its reliability. As stated above, Lewis denied making any statements that he stabbed the victim and the eyewitness testimony supported his testimony. Further, defendant

was not able to proffer any evidence to the court to support his contention that the alleged statements were actually made. As a result, we cannot say that the trial court abused its discretion when it prohibited the admission of Lewis's alleged statements.

¶ 34          IV. Right of Confrontation (Forensic Scientist Katherine Martin)

¶ 35     Defendant contends he was denied his sixth amendment right of confrontation when the trial court permitted the State to present forensic evidence through the testimony of forensic scientist Katherine Martin, who did not perform the testing or analysis of evidence collected from the scene. At trial, defendant argued Martin's testimony violated his right of confrontation as provided for in *Crawford v. Washington*, 541 U.S. 36 (2004), on the basis that two other analysts, Laura Shibert and Jen Belena, also completed some of the DNA analysis. The trial court permitted Martin to testify over defendant's objection. Defendant argues on appeal the DNA evidence was testimonial in nature and as such hearsay, unless the State called Laura Shibert and Jen Belena to testify, which it did not.

¶ 36     Here, we do not find any evidence to support a *Crawford* violation. Martin testified she performed the analysis and testing on the evidence she received and compared those findings with defendant's buccal swab and the victim's blood standard. Defendant does not point to any evidence in the record that Martin did not perform the testing and analysis that formed the basis of her opinion testimony. We conclude no *Crawford* violation existed because Martin's testimony was based on her personal testing and analysis of the evidence she received.

¶ 37          V. Impeachment as to Lewis Johnson's Alleged Mental Illness

¶ 38     Defendant contends the trial court erred when it refused to allow defendant to cross-examine Lewis Johnson about his alleged mental illness. Defendant argues Lewis suffered from bipolar and anxiety disorders and sometimes took medications for his illnesses (Seroquel and Prozac), which are both psychotropic medications that can affect his perception and memory. The trial court denied defendant's request, finding any evidence of Lewis's alleged mental illnesses lacking and speculative, other than a brief hospital stay for depression when he was 12 years old.

¶ 39     The mental health history of a witness can be relevant to assess the witness's credibility. *People v. Williams*, 147 Ill. 2d 173, 237 (1991). The relevance of such evidence, however, must first be established before it is introduced and the burden is on the party seeking to introduce the evidence. *Williams*, 147 Ill. 2d at 237. We review the trial court's determination regarding the admissibility of evidence for an abuse of discretion. *People v. Illgen*, 145 Ill. 2d 353, 364 (1991).

¶ 40     Here, the trial court's ruling refusing to permit defendant to cross-examine Lewis about his alleged mental illness was not an abuse of discretion. The State indicated to the court that Lewis was not taking any medication and the defense could not point to any evidence or medical records that Lewis had been examined or diagnosed by a doctor as having any mental illness or had been prescribed any medication. The burden was on defendant to establish the relevancy of such evidence, if it existed at all, and defendant failed to meet that

burden and failed to make an offer of proof to support his contention. We find no abuse of discretion in the trial court excluding the evidence.

¶ 41                    VI. Class X Offender (Out-of-State Prior Convictions)

¶ 42    Defendant contends the trial court improperly relied upon defendant's prior out-of-state felony convictions, which qualified him for sentencing as a Class X offender. Defendant argues the State failed to prove his prior convictions from Minnesota qualified him to be sentenced as a Class X offender.

¶ 43    A defendant may be sentenced as a Class X offender when he is convicted of a Class 1 or Class 2 felony, after having twice been convicted in state or federal court of an offense that contains the same elements as an offense now classified in Illinois as a Class 2 or greater class felony. 730 ILCS 5/5-5-3(c)(8) (West 2008). At defendant's sentencing hearing, the State tendered certified copies of defendant's prior felony convictions from Minnesota, which included burglary and discharge of a firearm from a vehicle. Defendant had been sentenced to a period of incarceration of 58 months for the firearm conviction. The State also noted defendant had two prior felony convictions (possession of a controlled substance and manufacture/delivery of cannabis), prior to the discharge of a firearm conviction, which would be the same crime in Illinois as unlawful use of a weapon by a felon, which is a Class 2 felony. The court commented that with respect to the burglary conviction, it had reviewed the certified convictions tendered by the State, the common law definition of burglary, as well as the FBI report about the crime, which referred to a "dwelling in connection with the burglary charge," and concluded defendant was eligible for Class X sentencing.

¶ 44    Here, defendant has not provided this court with any support for his contention that the trial court erred in finding him Class X eligible. Defendant has not included in the appellate record his certified prior convictions from Minnesota that were tendered to the court, which the court considered before imposing sentence. It is defendant's burden to present the court with a sufficiently complete record to support a claim of error, and in the absence of such a record on appeal, we will presume the trial court's order conformed with the law and had a sufficient factual basis. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). The record on appeal does not support defendant's contention that the trial court erred in finding defendant Class X eligible.

¶ 45                                   VII. Excessive Sentence

¶ 46    Defendant contends the trial court's sentence of 18 years was excessive and the trial court failed to consider in mitigation defendant's consistent work history, strong family ties and educational progress toward an associate of arts degree.

¶ 47    Before imposing sentence, the trial court stated it considered the evidence presented at trial, the presentence investigation report, the evidence offered in aggravation and mitigation, and defendant's statement to the court and apology to the victim's family. The court further considered defendant's prior felony convictions and noted defendant had a "very serious background."

¶ 48     Sentencing decisions are entitled to great weight and deference. *People v. Latona*, 184 Ill. 2d 260, 272 (1998). In determining an appropriate sentence, the defendant's history, character, rehabilitative potential, the seriousness of the offense, the need to protect society and the need for deterrence and punishment are to be considered. *People v. Lamkey*, 240 Ill. App. 3d 435, 441-42 (1992). When a sentence falls within the statutorily mandated guidelines, we presume it to be proper unless there is an affirmative showing that the sentence varies greatly from the purpose and spirit of the law, or is manifestly disproportionate to the nature of the offense. *People v. Averett*, 381 Ill. App. 3d 1001, 1020-21 (2008). A reviewing court may reduce a sentence imposed by the trial court only when the record affirmatively shows that the trial court abused its discretion. *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977). Absent an abuse of discretion, we should not substitute our judgment for that of the trial court. *People v. Jones*, 323 Ill. App. 3d 451, 460 (2001).

¶ 49     Here, we cannot say that there was an abuse of discretion. Defendant was convicted of the Class 1 felony offense of second degree murder (720 ILCS 5/9-2 (West 2008)), but based on his criminal history, was sentenced as a Class X offender (730 ILCS 5/5-5-3(c)(8) (West 2008)), which carries a sentencing range of 6 to 30 years (730 ILCS 5/5-8-1(a)(3) (West 2008)). Defendant's 18-year sentence is within the range of the statutorily mandated guidelines. His sentence neither varies greatly from the purpose and spirit of the law nor is it manifestly disproportionate to the nature of the offense.

¶ 50     Accordingly, we affirm the judgment of the trial court.

¶ 51     Affirmed.