2020 IL App (1st) 180999-U

No. 1-18-0999

Order filed November 12, 2020

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 8781 |
| | ) | |
| SHERRY ROBINSON, | ) | Honorable |
| | ) | Lawrence E. Flood, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Gordon and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm defendant's second degree murder conviction where (1) the State established that her use of force against the victim was unreasonable and (2) the trial court did not commit plain error during sentencing.

¶ 2    Following a bench trial, defendant Sherry Robinson was found guilty of second degree murder and sentenced to 11 years' imprisonment. On appeal, defendant argues that (1) her conviction should be reversed because the evidence and the trial court's findings of fact show that she stabbed the victim in self-defense, and (2) the trial court committed plain error by improperly

considering unreliable criminal history and uncorroborated conduct not resulting in conviction as aggravating factors at sentencing. For the following reasons, we affirm.[1]

¶ 3    Defendant was charged by indictment with two counts of the first degree murder of Kimble Knox. Count I alleged that on May 9, 2016, defendant, without lawful justification, intentionally or knowingly stabbed and killed Knox with a knife (720 ILCS 5/9-1(a)(1) (West 2016)). Count II alleged that defendant, without lawful justification, stabbed and killed Knox, knowing that stabbing Knox created a strong probability of death or great bodily harm to Knox (720 ILCS 5/9-1(a)(2) (West 2016)).

¶ 4    On July 20, 2017, the State filed a motion to admit proof of other crimes. The motion sought to admit evidence of an incident that allegedly occurred on June 16, 2009, in which defendant struck Knox in the chest with a knife causing lacerations. The State asserted this evidence was relevant to show defendant's motive, state of mind, intent, absence of mistake, and propensity to commit domestic violence. In reply, defendant argued the evidence was inadmissible hearsay contained in a police report that recorded Knox's account of the incident. As police were unable to later contact Knox, the investigation was suspended. Following a hearing, the trial court allowed leave to introduce evidence that Knox was intoxicated and went to the hospital after that incident, but excluded Knox's statements against defendant.[2]

¶ 5    At trial, Knox's brother, Anthony Knox,[3] testified he last saw Knox alive at a Mother's Day barbecue in May 2016. During the barbecue, Knox received several phone calls. Later,

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

[2] Ultimately, the State did not present any of this evidence at trial.

[3] Because Knox and Anthony share a last name, we refer to Anthony by his first name.

Anthony learned that Knox died. In court, Anthony identified defendant, who he stated had an "on and off" relationship with Knox for years. On cross-examination, Anthony testified that Knox drank throughout the day.

¶ 6    The State entered a stipulation that, if called, Erin Hansen would testify that she was employed by the City of Chicago Office of Emergency Management Communications (OEMC), and that an exhibit was a true and accurate copy of 911 calls defendant made to the OEMC on May 9, 2016, beginning at 12:31 a.m. The recordings were played in court. In the calls, defendant first states that there is an unknown man lying on her back steps and that she does not know what is wrong with him. In a later call, defendant says that her friend came over and was smoking a cigarette on her back steps when someone attacked him.

¶ 7    Chicago Fire Department paramedic Douglas Michael testified that around 12:30 a.m. on May 9, 2016, he received an assignment on the 4500 block of South Drexel Boulevard. When he arrived minutes later, the building's gate was locked and he had to wait 5 to 10 minutes until defendant, whom he identified in court, let him in. Defendant directed Michael to the building's "exterior back stairwell" where Michael saw Knox lying. Michael determined that Knox was deceased, that he had "trauma and bleeding," and that it was a crime scene.

¶ 8    While there, Michael had multiple conversations with defendant. Initially, defendant stated she did not know Knox. Defendant then admitted she knew Knox, but said she did not know what happened to him. Defendant then stated that Knox was involved in a "scuffle," and when she "came out he was there."

¶ 9    A knife was found near Knox's body. Defendant first told Michael she did not know who the knife belonged to, then said that the knife was hers, but she did not know how it got there.

Defendant later said that there was a "commotion," she handed the knife to Knox for his defense, and then she went back into the apartment. Michael identified multiple photographs that showed how he found Knox's body in the stairwell as well as Knox's wounds, including fresh ones to his leg and old ones to the back of his head.

¶ 10     On cross-examination, Michael testified that defendant led him to Knox, but he did not know if the police had been dispatched at that point. After Michael determined that Knox was deceased and it was a crime scene, he notified the police. Michael told a detective at the scene what defendant said about the incident. Michael did not include his conversations with defendant in a subsequent report. On redirect examination, Michael testified that no one was waiting for him outside when he arrived. On recross examination, Michael testified that the Drexel address had several different buildings and gates.

¶ 11     Chicago police officer Mariano Velazquez testified that sometime after midnight on May 9, 2016, he reported to the Drexel address. Velazquez talked to defendant, who appeared calm. Defendant told Velazquez that she and Knox were inside her apartment drinking and smoking marijuana. Knox went on the back porch to smoke a cigarette, and defendant heard a "commotion." When the commotion settled, she opened the door and saw Knox lying "unresponsive" on the back porch.

¶ 12     Velazquez asked defendant about a knife that he noticed near the door, and defendant said that she heard someone demand Knox's wallet, opened her back door, and saw Knox and a tall slender man struggling. She retrieved a knife from the kitchen, gave it to Knox so he could defend himself, and shut her door. Defendant waited about 10 minutes, opened the door, saw Knox unresponsive, and called 911. Defendant then put the knife back inside her apartment because she

was nervous. Velazquez identified photographs from the scene, which he stated included one of an unresponsive man lying face down with "severe blood," and one of the knife that was recovered.

¶ 13    Chicago police detective Matthew Benigno testified that during the early morning hours of May 9, 2016, he and his partner were assigned to investigate Knox's homicide. At the crime scene, Benigno saw defendant within a few feet of "physical evidence." Defendant appeared calm and told him that Knox came over to celebrate Mother's Day and they smoked marijuana together. Knox exited out the back door to smoke more marijuana while defendant stayed inside. A few moments later, she heard a commotion, opened the door, and saw Knox in a physical altercation with an unknown man. Defendant tossed a kitchen knife towards Knox, closed the door, waited approximately 10 minutes until the commotion stopped, reopened the door, and found Knox motionless on the porch. Benigno identified photographs of defendant's apartment, including the back door and stairwell, which he stated were a true and accurate depiction.

¶ 14    Chicago police detective Vidas Nemickas testified that he was working with Benigno on that evening. After leaving the Drexel address, Nemickas went to the police station where, at around 5:05 a.m., he spoke to defendant alone in an interview room. Defendant told him that she knew Knox for about 20 years and invited him over for Mother's Day. She and Knox drank and smoked marijuana together, Knox stepped outside to smoke a cigarette, and defendant heard a noise. Defendant opened the door and saw an unknown man attacking Knox on the rear porch. Defendant tossed a knife to Knox, closed the door, waited approximately 10 minutes, opened the door, saw Knox dead on the stairs, and called 911. Defendant told Nemickas that she may have stepped in the blood and that she hoped to clean up Knox's blood after his body was removed.

¶ 15     Defendant then told Nemickas she knew Knox a long time and wanted to tell the truth. She stated that she stabbed Knox during an argument after he punched her, and she then dragged his body outside. Nemickas arrested defendant. On cross-examination, Nemickas identified photographs of defendant taken at the police station, which he testified accurately depicted the way she looked when he spoke to her.

¶ 16     The State entered multiple stipulations. Chicago Police Department evidence technician Hermogene Del Toro, Jr. would testify that he photographed and marked evidence at the crime scene and would identify the photographs he took that day. Chicago Police Department forensic investigator Brian Smith would testify that he photographed the crime scene and defendant, and also recovered a knife, which was inventoried and maintained with a proper chain of custody. Illinois State Police forensic scientist Sheila Daugherty would testify that she examined a knife recovered from the scene, which revealed a latent impression made by defendant.

¶ 17     Cook County Medical Examiner Dr. Benjamin Soriano would testify that he photographed Knox's body and conducted an autopsy on Knox's body, which revealed a stab wound to his upper left chest about 2 and 1/4 inches deep that perforated Knox's skin, subcutaneous tissue, skeletal muscle, first left intercostal space, pericardium, and aortic arch. The wound path was oriented from front to back, left to right, and downward. Dr. Soriano also found a 1/4 by 1/8 inch red abrasion on the left posterior parietal scalp, a 1/8 by 1/16 inch brown abrasion of the left occipital scalp, and a 2 and 1/4 by 3/4 inch red and brown abrasion on the right cheek. Toxicology results showed that Knox was positive for cocaine and 337 milligrams of ethanol. In Dr. Soriano's opinion, the stab wound caused Knox's death and the manner of death was homicide.

¶ 18 Defendant testified that on the evening of May 8, 2016, Knox came to her apartment. At some point, Knox went into the bathroom. Knox was taking a long time, so defendant knocked on the door and asked him what was going on. Knox exited holding an "antenna pipe," which defendant testified is used to smoke cocaine. Knox yelled at defendant, called her a "b***," accused her of having sex with another man, knocked down her belongings, and kicked her doors. Defendant picked up the fallen objects and followed Knox into the kitchen, where he was putting on his coat. Knox started hitting defendant, and she ran from her back door to her front door trying to get away, but Knox closed the doors so she could not leave.

¶ 19 At some point, defendant stood with her back to the kitchen sink while Knox punched, hit, and choked her. Defendant was "terrified" that Knox was trying to "really hurt" her. She was "so scared" she reached behind her, "fumbled" through the sink, grabbed a steak knife, and "just poked" Knox to get him off her. Defendant testified she was not trying to hurt Knox, but only intended to save herself. After she "poked" Knox, he "slanted to the side." Defendant then dragged Knox outside because she "thought he was unconscious and going to wake up and get [her] again." She reported to 911 that someone tried to rob Knox because she was "so scared" and wanted the police to arrive quickly.

¶ 20 On cross-examination, defendant testified that she invited Knox, with whom she had a former relationship, over that evening because they always celebrated Mother's Day together. She made Knox dinner and they watched television, drank alcohol, and smoked marijuana. After Knox came out of the bathroom yelling, defendant asked him to leave, but he refused. Defendant called 911 two or three times to report Knox's behavior, but police did not come. Defendant ran to the back door, but Knox closed it and hit her with his fist between 5 and 10 times. Defendant got

"loose" and ran for the front door. She ran out her front door, went up a couple "flights of steps," and screamed for a neighbor. She saw Knox try to close her door "to lock [her] out." She did not give him a chance to close the door, returning to the apartment and pushing her way in to keep him from locking her out. When asked why she went back inside when she feared for her life, defendant responded she "wouldn't leave her apartment."

¶ 21    After defendant reentered her apartment, she closed the door. Knox continued to be violent, screaming and cursing at her. Defendant tried to push Knox out of the front door, but was unable to because he was "too strong." At the time, Knox weighed approximately 130 pounds and defendant weighed around 135 pounds. Defendant and Knox continued to argue. Knox hit defendant with his fist between 5 and 10 times in the face and defendant tried to push him off but he was stronger than her. Knox then choked defendant until she could not breathe and almost "passed out." Defendant was unable to stop him until she reached behind her to find something to get him off her. Knox stopped choking her only after she "poked" him with the knife.

¶ 22    Defendant was "so scared" and stunned, she pulled out the knife and Knox fell to the floor. Defendant "tossed" the knife to the side. She then dragged Knox out onto the back porch steps by his ankles so he could not "get up to hurt [her]." She did not know he was dead. She went back inside, locked the door, and called 911 saying Knox was robbed. Defendant stated that Knox gave her a black eye, "busted" nose, and cracked tooth that night.

¶ 23    Detectives took defendant to the police station before the ambulance arrived, so she did not let an emergency medical technician into her building or see anyone treat Knox. Defendant identified a photograph of the inside of her mouth and stated that it showed injuries to the top of her lip. Defendant identified photographs of her hands and testified that they did not show any

injuries. Defendant identified photographs of her face and testified that she did not have cuts, but did have bruises on her eyes, lips, and hairline.

¶ 24    Defendant confirmed that Knox knocked down objects in her bedroom that she picked up, but she did not attempt to lock herself inside the room. Defendant identified photographs of her bedroom and bathroom, and added that she did not try to lock herself inside the bathroom. Defendant identified photographs of her kitchen sink and the knife she used to stab Knox. Defendant acknowledged that she did not initially tell the 911 operator that Knox was stabbed or that she was in fear for her life. Defendant stated that the police did not arrive "on time," so she told the operator Knox was robbed to make them respond quicker. Defendant described the robbery to the 911 operator but was "out of it" and did not know what she was saying. Defendant did not remember if she called 911 during her argument with Knox. She testified she lied about Knox being robbed.

¶ 25    On redirect examination, defendant clarified that when she ran out the front door, she only ran up two steps. When Knox fell, defendant tossed the knife because she was in shock, but was not trying to throw it away. Defendant said she lied to police because she was scared. Defendant identified a photograph of her mouth and testified that it showed her injured lip and broken tooth, both of which happened that night.

¶ 26    The trial court found defendant guilty of two counts of second degree murder (720 ILCS 5/9-2(a)(2) (West 2016)). The court stated that the State established beyond a reasonable doubt that defendant intentionally and knowingly stabbed Knox with a knife, which created a strong probability of death or great bodily harm. The court recited the evidence and found defendant proved by a preponderance of the evidence that she believed that the circumstances justified the

use of deadly force based on her altercation with Knox, but it found her belief was unreasonable. The court noted that defendant's photo exhibits showed bruising on her face and under her eye and a cut on her lip. The court also noted it found defendant's lies to police "troubling." Defendant filed a motion for a judgment of acquittal or, in the alternative, a new trial, which the court denied.

¶ 27    Prior to sentencing, the trial court distributed defendant's presentence investigation report (PSI). The PSI provides that defendant had a happy childhood and was close with her siblings, nine biological children, and grandmother. Defendant stated she suffered from hypertension, asthma, anxiety, and depression. The report records no prior convictions.[4]

¶ 28    The court asked if the parties had any additions or corrections to the PSI. The State said that defendant had a 2006 misdemeanor conviction in Kansas for violating "a protective order issued from abuse" for which she received 30 days in jail and one year probation. Defense counsel did not object to the State's addition.

¶ 29    In aggravation, the State discussed the circumstances of the offense and argued that defendant's actions were unreasonable. It asked the court to note defendant's 2006 conviction was for a violation of an order of protection from abuse and that she had a "litany of misdemeanor arrests." Defense counsel objected to the admission of any arrests without underlying evidence, which the trial court overruled.[5] The State said that defendant had a number of misdemeanor arrests for aggravated assault and battery, which showed her "aggressive nature."

---

[4] The PSI states a search of her number on the Cook County Circuit Court Clerk's computer system reflected "records found," and a check of the Chicago arrest record and LEADS Response reflected "no records found."

[5] The State informed the court that it had tendered defendant's "background" to defense counsel. Beyond the PSI, which does not list arrests, no "background" of any kind is included in the record on appeal.

¶ 30    The State also asked the court to consider the evidence presented at the hearing on its motion to admit proof of other crimes because it involved Knox as the victim and defendant as the aggressor. Defense counsel objected because the evidence of the 2009 incident was "ambiguous." The trial court responded "[i]t's argument in aggravation," and it would give the evidence the "appropriate" weight. The State noted that the 2009 incident involved defendant stabbing the same victim in the chest with a knife. The State argued that, although defendant claimed she had no choice but to stab Knox in the instant case, she continued her relationship with him after that similar, earlier incident.

¶ 31    The State argued that defendant and Knox had a voluntary relationship and that defendant's perception of abuse was fabricated for the purposes of trial. Knox did not have any arrests or convictions for violent offenses and defendant's claim that Knox was abusive to her was supported only by her testimony. The State concluded with a victim impact statement from Knox's family in which they express that Knox was a beloved brother and their anger at defendant's refusal to acknowledge her full role in his death.

¶ 32    In mitigation, defendant's daughter, Crystal Newton, testified that she and defendant were very close and defendant helped care for Newton's son. In the past, Newton's father abused defendant, but Newton never saw defendant act as the aggressor or fight him back. Defendant had a drug problem, but to Newton's knowledge, had not used illegal drugs in over 20 years.

¶ 33    Defendant's cousin, Nykima Robinson, testified that after she suffered a stroke in 2011 that prevented her from reading or writing, defendant was her caregiver. Robinson knew Knox and described defendant's relationship with him as toxic because he would refuse to leave defendant's home when she asked.

¶ 34    Defense counsel asked the trial court to consider that defendant had a history of psychiatric issues and provided the court with her written statement in allocution.[6] Defense counsel then argued that defendant acted under strong provocation during a domestic dispute and that it could be inferred that Knox had been drinking, consumed drugs, and was the aggressor. Defense counsel further argued that defendant led a law abiding life before the commission of the present crime, and, other than the 2006 misdemeanor, had no other criminal convictions. Defendant cooperated in her group therapy and attended school prior to being incarcerated. She suffered a long history of abuse in another relationship and was diagnosed with posttraumatic stress disorder and a mental illness.

¶ 35    The trial court stated that it reviewed defendant's PSI and the statutory factors and arguments in aggravation and mitigation, including defendant's mental health issues. Although both defense counsel and the State referred to defendant's criminal background, the court considered it "minimal." The court concluded that neither probation nor the maximum sentence would be appropriate. It merged count II into count I and sentenced defendant to 11 years' imprisonment on the intentional and knowing murder count (720 ILCS 5/9-1(a)(1) (West 2016)). Defendant filed a motion to reconsider sentence, which the trial court denied.

¶ 36    On appeal, defendant first argues that her conviction for second degree murder should be reversed because the evidence and the trial court's findings of fact that Knox hit, punched, and choked her prior to her stabbing him show that she did so in self-defense and her use of force was reasonable.

---

[6] Defendant's statement is not in the record on appeal.

¶ 37    The standard of review on a challenge to the sufficiency of the evidence is whether after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). The trier of fact is responsible for assessing witness credibility, weighing the testimony, and drawing reasonable inferences from the evidence. *People v. Hutchinson*, 2013 IL App (1st) 102332, ¶ 27. It is not the reviewing court's duty to retry the defendant. *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011). The State must prove each element of an offense beyond a reasonable doubt. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009). A reviewing court will only reverse a criminal conviction when the evidence is so improbable or unsatisfactory that there remains a reasonable doubt as to the defendant's guilt. *Beauchamp*, 241 Ill. 2d at 8.

¶ 38    A person commits first degree murder when she kills an individual without lawful justification and, in performing the act which causes the death, either intends to kill or do great bodily harm to that individual or another or knows that such acts will cause death to that individual or another. 720 ILCS 5/9-1(a)(1) (West 2016). A person's use of force against another is justified as self-defense where she was not the aggressor and reasonably believed that such force was necessary to prevent imminent death or great bodily harm to herself or another, or the commission of a forcible felony. 720 ILCS 5/7-1 (West 2016); *People v. Jeffries*, 164 Ill. 2d 104, 127 (1995).

¶ 39    A person commits second degree murder when she commits the offense of first degree murder and, at the time of the killing, "believes the circumstances to be such that, if they existed, would justify or exonerate the killing *** but *** her belief is unreasonable." 720 ILCS 5/9-2(a)(2) (West 2016). This is known as imperfect self-defense, and " 'occurs when there is sufficient evidence that the defendant believed [s]he was acting in self-defense, but that belief is objectively

unreasonable.' " *People v. Castellano*, 2015 IL App (1st) 133874, ¶ 148 (quoting *Jeffries*, 164 Ill. 2d at 113).

¶ 40    To raise self-defense, a defendant must provide some evidence that (1) unlawful force was threatened against her, (2) she was not the aggressor, (3) the danger of harm was imminent, (4) the use of force was necessary, (5) she actually and subjectively believed a danger existed that required the use of the force applied, and (6) her belief was objectively reasonable. *People v. Lee*, 213 Ill. 2d 218, 225 (2004). Once the defendant has met her burden, the burden of proof shifts to the State to prove beyond a reasonable doubt not only that the defendant is guilty of first degree murder, but that she did not act in self-defense, which it does by negating any one of the elements of self-defense. *Jeffries*, 164 Ill. 2d at 127-28. Whether a defendant acted in self-defense is a question of fact, and the trier of fact may consider the probability of the defendant's account, circumstances surrounding the crime, and other witnesses' relevant testimony. *People v. Young*, 347 Ill. App. 3d 909, 920 (2004).

¶ 41    Defendant does not dispute that the State established the requisite elements of first degree murder. Instead, defendant contends that the State failed to prove beyond a reasonable doubt that she did not act in self-defense where the evidence showed that she was hit and punched by Knox and he was choking her when she stabbed his chest. She argues the evidence shows her use of force in stabbing Knox was necessary self-defense.

¶ 42    Viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found beyond a reasonable doubt that defendant's belief that deadly force against Knox was necessary was not objectively reasonable. The State established that defendant admitted that she stabbed Knox, who was not armed, during an argument after he refused to leave

her apartment and tried to lock her out. A medical examiner would have testified that Knox died of a stab wound that penetrated 2 and 1/4 inches deep into his chest. After stabbing Knox, defendant dragged his body onto her back porch before calling authorities. When she did contact authorities, defendant told multiple conflicting stories, including that a stranger attacked Knox, before she ultimately told a detective the "truth." The trial court found defendant's lies "troubling," and we defer to its credibility determinations. See *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001) ("It is the trier of fact's responsibility to determine the witnesses' credibility and the weight given to their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from the evidence; we will not substitute our judgment for that of the trier of fact on these matters."). Accordingly, we find the evidence supports the trial court's finding that defendant's belief that she needed to use deadly force to defend herself against Knox was unreasonable.

¶ 43    Although defendant claimed that she could not physically fight Knox off of her, the evidence established that at the time of the incident, she weighed more than him, and she was able to drag his body out her back door and onto her back stairway. Further, throughout their extended altercation, defendant was able to escape Knox first to the back door and then out the front door. Even though defendant escaped up the stairs, she was apparently more concerned with retaining possession of her apartment than her safety at that point in time because she pushed her way back into the apartment, closing the door behind her. Additionally, while defendant claimed she "just poked" Knox with a knife to stop him from choking her, he died of a downward stab wound, administered with enough force to puncture 2 and 1/4 inches deep through his skin, subcutaneous tissue, skeletal muscle, first left intercostal space, pericardium, and aortic arch. Given the conflicts in evidence, we cannot say that the trial court erred in finding that the State met its burden to

demonstrate that defendant's belief that the circumstances warranted deadly force was unreasonable. See *id.*

¶ 44    In reaching this conclusion, we are not persuaded by defendant's reliance on *People v. Evans*, 259 Ill. App. 3d 195 (1994). In *Evans*, we reversed a first degree murder conviction after finding that the State had not proved beyond a reasonable doubt that the defendant's use of deadly force was unreasonable or unnecessary, specifically emphasizing her history of being abused and sent to the hospital by the victim. *Evans*, 259 Ill. App. 3d at 205-06, 216-17. Unlike in *Evans*, defendant here did not have a history of abuse at the hands of Knox. Therefore, we find the facts of this case distinguishable from *Evans*.

¶ 45    Defendant next argues that the trial court improperly considered unreliable criminal history and uncorroborated conduct not resulting in conviction as aggravating factors at sentencing. Specifically, defendant points to the State's introduction at sentencing of her arrest history and mention of the 2009 incident recited in the motion to admit proof of other crimes.

¶ 46    Although defense counsel objected to this evidence during the hearing, defendant concedes that she failed to properly preserve this issue for appeal because she did not renew her objection in her posttrial motion to reconsider her sentence. See *People v. Hillier*, 237 Ill. 2d 539, 544 (2010) ("It is well settled that, to preserve a claim of sentencing error, both a contemporaneous  objection and a written postsentencing motion raising the issue are required."). Still, defendant asserts that we may review the issue under the plain-error doctrine.

¶ 47    The plain-error doctrine is a narrow and limited exception to the forfeiture rule. *Id.* at 545. In the sentencing context, a reviewing court may address a forfeited claim if a clear and obvious error occurred and either (1) the evidence at the sentencing hearing was closely balanced, or

(2) the error was so serious that it deprived the defendant of a fair sentencing hearing. *Id.* Defendant argues that the first prong applies; however, our initial consideration is whether an error occurred at all. *Id.*

¶ 48    A sentence within the statutory guidelines is presumed proper. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. In order to overcome this presumption, a defendant "must make an affirmative showing that the sentencing court did not consider the relevant factors." *People v. Burton*, 2015 IL App (1st) 131600, ¶ 38. Here, defendant was convicted of second degree murder, a Class 1 felony with a sentencing range of not less than 4 years and not more than 20 years. See 720 ILCS 5/9-2(a)(2), (d) (West 2016); 730 ILCS 5/5-4.5-30(a) (West 2016). Defendant was sentenced to 11 years' imprisonment, which is well within the statutory sentencing range, and thus, we presume the sentence is proper. See *Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 49    Nevertheless, defendant argues the trial court improperly considered (1) her unverified criminal history, *i.e.*, her prior arrests, and (2) the uncorroborated information regarding the 2009 incident raised in the State's motion to admit proof of other crimes, *i.e.*, that Knox told police defendant stabbed him in the chest as recorded in a 2009 police report.

¶ 50    Evidentiary rules are relaxed at sentencing hearings, and thus, " 'a sentencing judge is given broad discretionary power to consider various sources and types of information so that he can make a sentencing determination within the parameters outlined by the legislature.' " *People v. Williams*, 2018 IL App (4th) 150759, ¶ 17 (quoting *People v. Williams*, 149 Ill. 2d 467, 490 (1992)). Evidence is admissible at sentencing hearings if it is relevant and reliable. *Id.* " '[C]riminal conduct for which there has been no prosecution or conviction may be considered in sentencing. Such evidence, however, should be presented by witnesses who can be confronted and

cross-examined, rather than by hearsay allegations in the presentence report, and the defendant should have an opportunity to rebut the testimony.' " *People v. Raney*, 2014 IL App (4th) 130551, ¶ 43 (quoting *People v. Jackson*, 149 Ill. 2d 540, 548 (1992)).

¶ 51 The mere mention of an improper factor at sentencing does not mean the court relied on that factor. *People v. Beals*, 162 Ill. 2d 497, 509-10 (1994). Instead, a trial court is presumed to have recognized and disregarded incompetent evidence unless the record affirmatively reveals the contrary. *In re N.B.*, 191 Ill. 2d 338, 345 (2000) (a court is "presumed to know the law and apply it properly, absent an affirmative showing to the contrary in the record"). When a court considers an improper factor, we must order resentencing if we cannot determine the weight of the factor. *People v. Minter*, 2015 IL App (1st) 120958, ¶ 152. Conversely, we need not order resentencing if the court placed minimal emphasis on an improper factor. *Id.*

¶ 52 In determining whether a sentencing court afforded significant weight to an improper factor, we may consider (1) whether it made any "dismissive or emphatic comments" in reciting its consideration of the factor, and (2) whether the sentence received was substantially less than the maximum permissible sentence. *People v. Dowding*, 388 Ill. App. 3d 936, 945 (2009). Whether a court relied on an improper factor is a question of law that we review *de novo*. *People v. Bowen*, 2015 IL App (1st) 132046, ¶ 49.

¶ 53 Even if defendant's arrest history or the 2009 incident was improperly argued, it is clear the court did not afford this evidence any significant weight. Again, a trial court is presumed to consider only competent evidence unless the record affirmatively reveals the contrary. *In re N.B.*, 191 Ill. 2d at 345. Here, although the court allowed the State to argue in aggravation that defendant had prior arrests for aggravated assault and battery, in pronouncing sentence, the court expressly

noted that it considered defendant's criminal background to be "minimal." The court focused on defendant's PSI and the statutory factors and arguments made in aggravation and mitigation before it sentenced defendant to a term well within the statutory sentencing range, and nine years below the statutory maximum. With regard to the State's reference to the 2009 incident between defendant and Knox, the court made no mention of this information whatsoever at sentencing. The record demonstrates that the court placed only minimal emphasis on defendant's arrest history and no emphasis on the uncorroborated 2009 incident, and defendant does not show otherwise. Thus, there was no plain error. See *Hillier*, 237 Ill. 2d at 545.

¶ 54    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 55    Affirmed.