2024 IL App (2d) 240381-U
No. 2-24-0381
Order filed October 4, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24-CF-961 |
| ALFREDO DE LA CRUZ, | ) ) | Honorable Theodore S. Potkonjak, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE KENNEDY delivered the judgment of the court.
Presiding Justice McLaren and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The trial court erred in denying defendant's pretrial release where conditions could mitigate the threat defendant poses to a person, persons, or the community. Reversed and remanded.

¶ 2     Defendant, Alfredo De La Cruz, appeals from the denial of his pretrial release under section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)). For the following reasons, we reverse and remand to set conditions of defendant's release.

¶ 3                                    I. BACKGROUND

¶ 4      On May 20, 2024, defendant was charged by information with the following four counts related to his acts against the alleged victim, C.P.: aggravated criminal sexual assault (720 ILCS 5/11-1.30(c) (West 2022) (Class X felony)) (sexual penetration by placing his penis in the victim's mouth and the victim has a severe or profound mental disability), two counts of criminal sexual assault (*id.* § 11-1.20(a)(1), (2) (Class 1 felony) (sexual penetration by use of force and sexual penetration knowing the victim was unable to knowingly consent or understand the nature of the act), and one count of aggravated criminal sexual abuse (*id.* § 11-1.60(e) (Class 2 felony) (sexual conduct for purposes of sexual gratification or arousal and the victim has a severe or profound mental disability)).[1]

¶ 5      On May 21, 2024, the State filed its verified petition to deny defendant pretrial release. Therein, the State alleged the following facts. On May 17, 2024, police responded around 8 p.m. to the Vista East Hospital emergency department, where Liliana Arteaga was being treated for a panic attack. She had disclosed to paramedics that her daughter, C.P., had been the victim of a sexual assault. Arteaga stated that, for the past two years, she had been cleaning defendant's home in Beach Park. Defendant was married, and both he and his wife were in their seventies. C.P. would come with Arteaga to clean the house because she could not be left alone due to her cognitive and

---

[1]On June 12, 2024, the State amended the information to add 13 counts against defendant. The additional counts included two more counts of aggravated criminal sexual assault in that defendant knowingly committed an act of sexual penetration against C.P., who had a severe or profound mental disability. All additional counts related to defendant's sexual acts against C.P.

physical disabilities: she had been diagnosed with schizophrenia, was nonverbal, and remained in a catatonic state. C.P. had been in a mental hospital for extended periods of time.

¶ 6    Arteaga stated that, on May 10, 2024, she was at defendant's residence cleaning his house when she walked downstairs and observed defendant near C.P., where he was zipping the front of his pants. Arteaga was suspicious of defendant's actions and worried for C.P. because she could not stop whatever defendant may have been doing.

¶ 7    Arteaga continued that, on May 17, 2024, she returned to defendant's residence to clean as scheduled; defendant was home, but his wife was at work. Arteaga left a cellphone near C.P., who was sitting in a chair watching television, to record her while she worked. She recorded four separate videos that day, and the videos showed defendant sitting next to C.P. on a couch. A video showed that, at one point, defendant unzipped his pants and placed C.P.'s hand on his exposed penis. Defendant then stood up, unbuttoned his pants, and forced C.P. to perform oral sex on him by placing his penis in her mouth.

¶ 8    The videos showed that defendant walked away from C.P. and returned to her at least five times, each time forcing C.P.'s mouth back onto his penis. Defendant also used C.P.'s right hand to manipulate his penis, and he touched her breasts and kissed her. C.P. showed no sign of being able to stop his actions.

¶ 9    The trial court heard the State's petition on May 23, 2024. For purposes of the detention hearing, the defense stipulated that the State had proved that the proof was evident or the presumption great that defendant had committed the detainable offense of aggravated criminal sexual assault.

¶ 10    The State argued that defendant's release would pose a real and present threat to a person, persons, or the community, citing his 2006 charge for aggravated battery of a police officer (for

which he was found not guilty). The State then recounted the factual synopsis contained in its petition. The State added that defendant's wife owned Delia's Daycare,[2] which served children, including some who are young and some who are non-verbal. The State contended that "defendant poses a real and present risk not only to this victim [(C.P.)] but to any vulnerable person in the community." The State argued that defendant "obviously chose his victim purposefully" because he knew C.P. was incapable of stopping him physically and unable to say anything to others about what he did to her. Therefore, defendant "cannot be trusted in the presence of any vulnerable person. That includes children, people with disabilities, elderly people, animals." The State argued that C.P.'s mother trusted defendant and he took advantage of that trust, and that defendant "also has access to other vulnerable people including children through his wife's daycare."

¶ 11    The State then asserted that there are no conditions that could mitigate the real and present threat defendant poses to others. It contended that he was "not the type of person who can be monitored," with even 24-hour monitoring being inadequate to guarantee he will not assault another vulnerable person.

¶ 12    The defense called defendant's 33-year-old son, Edgar De La Cruz, who stated as follows. His father, defendant, and his mother were both 70 years old.[3] If released, Edgar would be able to be with defendant full-time so that he would not be alone with anyone else. He also had other

---

[2]We take judicial notice that Delia's Daycare was located at 1401 Washington Street in Waukegan. Defendant's home address is approximately six miles away in Beach Park. We further note that, based on Google Street view photographs, Delia's Daycare appears closed and shuttered as of July 2024.

[3]Defendant was born on June 10, 1953, and is 71 years old at the time of this disposition.

siblings who could be around defendant. Edgar stated that defendant had had an operation about a year prior that had affected his mental health—he claimed an issue related to defendant's anesthesia, and there was a pending lawsuit. Since then, defendant did not do things like turn off water or close doors.

¶ 13    Defense counsel argued that defendant's family would be able to watch him, and that defendant would not be anywhere near his wife's daycare center in Waukegan. Counsel also cited defendant's age and mental status as factors weighing against pretrial detention.

¶ 14    The trial court granted the State's petition and ordered that defendant be detained pretrial. At the hearing, the court explained that defendant had no criminal history, but the victim had no one to protect her, and the video of the assault "speaks for itself." The court found defendant's acts were premeditated and that he posed a danger. The court also cited defendant's wife's daycare, although it admitted that it "[didn't] know how much contact [defendant] had with those children in the past or that notwithstanding his son who I believe 100 percent."

¶ 15    The trial court's written order checked boxes that defendant had committed a detainable offense, that he posed a real and present threat to the safety of any person, persons, or the community, and that no condition or combination of conditions can mitigate the real and present threat defendant posed. The written order made no reference to the specific, articulable facts of the case, except to say that defendant shall have no contact with C.P. or her family.

¶ 16    On June 4, 2024, defendant filed a motion for relief from his pretrial detention. In his motion, which serves as his argument on this appeal since he did not file a timely memorandum (see Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024)), he argued that the facts of this case were similar to those of our decision in *People v. Martinez-Ortiz*, 2024 IL App (2d) 240102-U, where we reversed the order detaining the defendant pretrial. Defendant argued that, similar to why

conditions existed in *Martinez-Ortiz* that could mitigate that defendant's threat, conditions exist in this case that could mitigate the threat defendant posed to others or the community. Defendant made several comparisons between the two cases: neither defendant had a criminal conviction; both defendants were older (71 here and 57 in *Martinez-Ortiz*); the *Martinez-Ortiz* defendant lacked ties in the local community, whereas defendant had lived in the same house for 20 years and had ties to the community, including his children; and the *Martinez-Ortiz* victim was a related child, whereas the victim here was an unrelated adult.

¶ 17    On June 13, 2024, the trial court heard and denied defendant's motion for relief. The State argued against the motion by distinguishing *Martinez-Ortiz* in that the defendant there enjoyed a special position of trust with the victim, whereas the victim in this case was not a family member, which indicated that defendant could be a threat to the public generally. Without elaboration, the court concluded that the *Maritnez-Ortiz* case was distinguishable, and it stated that only electronic, not GPS, monitoring was available.[4] It stated that the "facts of this case were egregious to say the least," and it stood on its previous ruling.

¶ 18    Defendant timely appealed.

¶ 19                                II. ANALYSIS

¶ 20    Through his motion for relief from his pretrial detention filed in the trial court, defendant raises one ground for relief: the State failed to prove that no condition or combination of conditions would mitigate defendant's real and present threat to the safety of another person, persons, or the community. See 725 ILCS 5/110-6.1(e)(3) (West 2022).

---

[4]The trial court stated that GPS monitoring was available only "if it's an ODARA case where the male and female, they have an actual relationship."

¶ 21     Pretrial release is governed by article 110 of the Code. *Id.* § 110-1 *et seq*. Under the Code, a defendant's pretrial release may be denied only for certain charged offenses. *Id.* §§ 110-2(a), 110-6.1. Defendant was charged with a detainable offense. See *id.* § 110-6.1(a)(1.5) (listing aggravated criminal sexual assault as a detainable offense).

¶ 22     To detain a defendant, the trial court must find that the State proved the following by clear and convincing evidence: (1) the proof is evident or the presumption great that the defendant committed a detainable offense (*id.* § 110-6.1(e)(1)); (2) the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case (*id.* § 110-6.1(e)(2)); and (3) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community, based on the specific articulable facts of the case (*id.* § 110-6.1(e)(3)). Only the third requirement is at issue on this appeal.

¶ 23     We review whether the trial court's findings were against the manifest weight of the evidence. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13; *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 10. A finding is against the manifest weight of the evidence when it is unreasonable. *People v. Sims*, 2022 IL App (2d) 200391, ¶ 72. We review the trial court's ultimate decision regarding pretrial release for an abuse of discretion. *Trottier*, 2023 IL App (2d) 230317, ¶ 13.

¶ 24     Here, the trial court's finding on conditions was against the manifest weight of the evidence and its decision to detain was therefore an abuse of discretion. Although the State attempts to distinguish our decision in *Martinez-Ortiz*—as well as pointing out that it is merely persuasive and, puzzlingly, that the decision of one district of the appellate court is not binding on another district (*nota bene*, this court decided *Martinez-Ortiz*)—the reasoning of that decision is instructive

and, in fact, some circumstances of this case weigh in favor of this defendant's release more than they did in *Martinez-Ortiz.*

¶ 25    In *Martinez-Ortiz*, the defendant abused his position of trust and confidence in sexually assaulting his granddaughter during family visits. *Martinez-Ortiz*, 2024 IL App (2d) 240102-U, ¶ 28. Notably, defendant lost his position of trust and, importantly, lost access to the alleged victim once the allegations came to light. *Id.* The defendant had no prior allegations of misconduct, sexual or otherwise, and had no prior criminal history. *Id.* ¶ 29. Moreover, we explained that the threat the defendant allegedly posed to another person, persons, or the community was not based on the specific articulable facts of the case but instead on the speculative possibility that the defendant would abuse others without occupying a position of trust or confidence "through a familiar relation *or otherwise.*" (Emphasis added.) *Id.* ¶ 30. Likewise, here, defendant has lost the special access to C.P. that he had had because Arteaga had brought her to his home while she worked. That C.P. is unrelated to defendant is not the salient point of comparison; rather, like the trust and confidence the *Martinez-Ortiz* defendant enjoyed in visiting his granddaughter, defendant had access to C.P. because of the intrinsic trust and confidence Arteaga placed in him by bringing her disabled daughter to his home.

¶ 26    In addition, defendant here also has no prior convictions or allegations of sexual misconduct, and the alleged real and present threat was generalized and speculative instead of, as required by the Code, being based on the specific articulable facts of the case. See 725 ILCS 5/110-6.1(e)(2), (3) (West 2022); *Martinez-Ortiz*, 2024 IL App (2d) 240102-U, ¶¶ 30-32 (explaining that it was insufficient for the State to rest on the bare allegations of the complaint; more than conjecture was needed to demonstrate the threat that the defendant would reoffend). Also, like in *Martinez-Ortiz*, the trial court did not make a meaningful analysis whether conditions could

mitigate defendant's alleged threat. Finally, unlike in *Martinez-Ortiz*, defendant has an established home address in Illinois with family members present and available, one of whom was found credible in his promise to monitor defendant while on release.

¶ 27    To be sure, we agree with the trial court that defendant's conduct was egregious; the nature of the charged conduct is both serious and repugnant. However, no other evidence was presented to show that conditions of release could not mitigate defendant's alleged real and present threat to others or the community. Moreover, the purpose of pretrial detention is not to punish a defendant prior to trial for their alleged wrongdoing, no matter how repugnant. Under the plain language of the statute, the purpose of pretrial detention is to guard against a real and present threat, based on the specific articulable facts of the case, which cannot be sufficiently mitigated by conditions of the defendant's pretrial release. See 725 ILCS 5/110-6.1(e) ("All defendants shall be presumed eligible for pretrial release[.]"); see also *id.* § 110-2 (providing that the State bears the burden of proving that pretrial release should be denied because that person presents a real and present threat to the safety of any person, persons or the community).

¶ 28    In this case, the evidence is that a now 71-year-old man with no criminal record, indeed with no prior accusations or convictions of sexual misconduct, sexually assaulted a disabled woman, who could not understand or refuse his advances, within the confines of his home. He will no longer have access to C.P. In addition, defendant's son, Edgar, stated that he intended to watch over defendant at all times while defendant is awaiting trial, and the trial court believed that Edgar was sincere. The trial court can order that defendant be supervised by family as a condition of his release, among other conditions to ensure defendant does not pose a real and present threat to anyone else. As to the daycare that the defendant's wife operated, there was no allegation that defendant attended or was ever present at the daycare in any capacity, nor do the specific facts

show that defendant had a predilection for children. Nevertheless, the trial court can order that defendant stay away from his wife's work. Importantly, the State did not offer any evidence beyond the allegations to show why conditions such as ordering family supervision and no-contact with the daycare would be insufficient to mitigate defendant's alleged threat, and the trial court made no findings why such conditions would be insufficient or why defendant would not comply with them. See *id.* § 110-6.1(e)(3) (providing that the State bears the burden of proving by clear and convincing evidence that no conditions can mitigate a defendant's real and present threat to any person, persons, or the community).

¶ 29 In short, the trial court erred in determining that because defendant committed one offense, he was an unmitigable, real and present threat to commit others, despite his lack of a criminal history, the voluntary presence of family members to watch over defendant, the specific circumstances of access to a vulnerable victim within defendant's home, and the speculative nature of defendant's real and present threat to others at the daycare or the community generally. See *id.* § 110-5(a) (in considering conditions of pretrial release, the court considers the nature *and circumstances* of the offense charged; the defendant's history and character, including mental condition, family ties, and criminal history; and the nature and seriousness of the real and present threat *based on the specific articulable facts of the case*). For these reasons, the trial court's finding on conditions of release was against the manifest weight of the evidence and its detention order an abuse of discretion.

¶ 30                                        III. CONCLUSION

¶ 31 The trial court erred in denying defendant's pretrial release. We reverse the order of the Lake County circuit court and remand to set conditions of defendant's release.

¶ 32 Reversed and remanded.